## STATE v. HERBERT B. WALKER.

### (Filed 20 January, 1967.)

**1. Criminal Law § 99—**

Contradictions and discrepancies, even in the State's evidence, are for the jury to resolve, and do not warrant nonsuit.

**2. Robbery § 4—**

The evidence in this case *held* sufficient to be submitted to the jury on the question of defendant's guilt as an aider and abettor in the perpetration of an armed robbery.

**3. Criminal Law § 71—**

While a witness may read to the jury a voluntary confession made by defendant as typed, transcribed or put down in shorthand by the witness when the witness testifies that the writing contains verbatim the words of defendant, this rule does not extend to the reading by the witness of the witness' interpretative narration of what the witness understood to be the purported statements made by accused.

**4. Same—**

Where defendant signs a written statement of his purported voluntary confession, even though reduced to writing by another person, it will be presumed, nothing else appearing, that the accused had read it or had knowledge of its contents, but this presumption cannot be indulged when the State's own evidence establishes that the statement was not read to, or by, the accused before he signed it.

**5. Same—**

While a witness may refer to a written memorandum prepared by him for the purpose of refreshing his memory as to incriminating statements made by the defendant, only the personal sworn testimony of the witness, and not the memorandum, would be competent as substantive evidence, and when the witness reads the memorandum itself to the jury and the memorandum does not tend to corroborate the testimony of the witness, but is in direct conflict with the statements attributed to defendant by the witness at the trial, the admission of the written statement in evidence is prejudicial error.

APPEAL by defendant from *Copeland, Special Judge,* March 21, 1966 Regular Criminal Session of GUILFORD Superior Court, Greensboro Division.

The indictment charging armed robbery, for which appellant was tried, convicted and sentenced at May 24, 1965 Criminal Session of Guilford Superior Court, Greensboro Division, is set out in *S. v. Walker,* 266 N.C. 269, 145 S.E. 2d 833, where this Court, for reasons stated, awarded a new trial. Pursuant thereto, defendant was again tried on the same indictment at said March 21, 1966 Criminal Session, and was again represented at trial by James G. Exum, Esq., court-appointed counsel.

At the first (1965) trial, the *Walker, Lawson* and *Moore* cases

were consolidated for trial. Roberts testified as a State's witness. Walker, Moore and Lawson did not testify. At the second (1966) trial, defendant did not testify. Roberts, Moore and Lawson, *as witnesses for defendant*, did testify.

The jury returned a verdict of "guilty as charged in the bill of indictment," and judgment, imposing a prison sentence of not less than twelve nor more than fifteen years, was pronounced. Defendant excepted and appealed.

*Attorney General Bruton, Deputy Attorney General McGalliard and Staff Attorney White for the State.*

*Smith, Moore, Smith, Schell & Hunter and James G. Exum, Jr., for defendant appellant.*

BOBBITT, J.   There was evidence tending to show: Soon after 5:00 p.m. on Tuesday, March 30, 1965, Roberts, Moore and Lawson entered the place of business of Charles Fine and his wife, Jean Fine, at 332 South Elm Street, Greensboro, N. C. The overt acts constituting the robbery charged in the bill of indictment were committed by Roberts and Moore. After the robbery, Roberts, Moore and Lawson, pursued by Mr. Fine and Officer Brewer, fled through an alley to a parking lot. Moore and Lawson ran to and got in a car, parked on McGee Street, occupied solely by Walker. Moore then jumped out and ran. Walker and Lawson were in the car when Officer Brewer arrived and arrested them. Later, elsewhere, Roberts and Moore were arrested. Walker was tried and convicted upon the theory that he aided and abetted Roberts, Moore and Lawson in the commission of said robbery.

Defendant excepted to and assigns as error the denial of his motion for judgment as of nonsuit at the conclusion of all the evidence. This assignment is without merit. "Contradictions and discrepancies, even in the State's evidence, are for the jury to resolve, and do not warrant nonsuit." 1 Strong's N. C. Index, Criminal Law § 99. The evidence, when considered in the light of the legal principles stated in our opinion on former appeal, was sufficient to require submission to the jury.

Defendant assigns as error the admission, over his objection, of testimony of Sergeant Melton, of the Detective Division of the Greensboro Police Department, as to statements made by defendant when questioned by him the night of March 30th. It is noted that this appeal is from a trial conducted prior to the decision in *Miranda v. State of Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R. 3d 974. In the absence of the jury, the court heard evidence relevant to the admissibility of this testimony, the State offering tes-

timony of Sergeant Melton and of Captain Jackson (of said Detective Division), and defendant offering his own testimony and the testimony of Roberts and Lawson. After consideration of this conflicting evidence, the court found as facts that defendant had been fully informed as to his constitutional rights and that any statements made by him were made voluntarily. We pass, without decision or discussion, assignments of error with reference to the asserted insufficiency of the evidence to support said findings.

Decision on this appeal is based on the ground Sergeant Melton was permitted, over defendant's objection, to read to the jury a two-page typed statement bearing defendant's signature and produced and signed under circumstances narrated below. The statement is quoted in full in the record before us.

A preliminary hearing for Walker was held March 31, 1965, during the morning session of the Greensboro Municipal-County Court.

The State's evidence tends to show: Walker, awaiting preliminary hearing, was confined in the lockup room just outside the courtroom. Sergeant Melton produced the two-page typed statement, told Walker he would like to get his signature on it and passed the statement and the pen into the room where Walker was confined. Walker was in said lockup room when he signed the statement with said pen. Sergeant Melton testified that "Walker had an opportunity to read" the statement; that Walker stated "that he didn't want to read it, that he knew what was in it"; and that Walker "signed it with his (Melton's) pen." He also testified that the case "had already been called in the Municipal-County Court for hearing when (he) confronted (Walker) with the typewritten statement which he signed." The final paragraph includes the following: "I have heard this statement read to me . . ." Actually, the statement was never read to defendant. Sergeant Melton testified: "The fact is that the defendant Walker never read it. He refused to read it. He just signed it." Note: Walker testified (on *voir dire*) he had no opportunity to read the statement; that it was presented to him, after his case had been called, just as he was being taken from the lockup room to the courtroom; that he put it against the wall and signed it when he "was standing up at the door getting ready to go into the courtroom"; and that he signed it because he had been given assurances it would be to his interest to cooperate with the officers.

Before the statement was read in evidence, Sergeant Melton answered affirmatively the court's question as to whether the typed statement set forth "exactly what Walker had told (him) happened."

The night of March 30th Walker was first questioned by Sergeant Melton. Melton (on *voir dire*) testified: "He (defendant) kept

making the statement that he didn't know anything about the robbery at Fine's Loan Company. He denied any knowledge of any robbery at Fine's Loan Company. After questioning Walker about thirty to forty minutes, I carried him to Captain Jackson's office where he was placed with Mr. Lawson and Mr. Roberts. Officers had been questioning Lawson and Roberts separately during this time. Statements had been taken from both Roberts and Lawson. Both Roberts and Lawson had said that Walker did not know the robbery was going to be committed at Fine's. The statements of Lawson and Roberts tended to absolve Walker from any knowledge or implication from the robbery at Fine's." Again: "Walker and Lawson had told us that they had planned to rob a jewelry store but had called it off. Roberts, the one who pulled the gun on Mr. Fine, had told us that this was something he had decided to do on the spur of the moment and Lawson agreed with Roberts's characterization of this action." Captain Jackson (on *voir dire)* testified: "He (defendant) had told us that he had not known anything about the robbery. That is what Officer Melton told me he said. In my office he told all of us that he did not know anything about it. He maintained this story throughout the evening of March 30, 1965." About nine o'clock the morning of March 31st, Detective Belvin and Sergeant Melton "got Walker from his cell and questioned him again"; but there is *no testimony* as to what Walker said at that time.

The witnesses for defendant at trial testified a plan to rob a jewelry store had been abandoned; that there was no plan to rob any person or place of business when they left defendant shortly before the robbery at Fine's Loan Company; that their original purpose when they went into Fine's Loan Company was to see if Moore could pawn a ring and watch; and that the robbery was triggered, without prior plan, by Roberts's impulsive and unforeseen actions.

In contrast to the statements made by Walker, Roberts and Lawson on the night of March 30th, and also in contrast to the testimony of Roberts, Lawson and Moore at the trial, the typed statement purports to be a complete confession of guilt by Walker. While there are other incriminating portions, the following excerpt is sufficient to show such contrast: "Then Herbert states the conversation started about robbing or breaking in a place because they needed the money. This was around twelve noon. They drove around in the uptown area, looking for a place. They picked out this jewelry store on South Elm Street. They circled the block three or four times, looking for a place to park, and at the same time, casing the jewelry store. Herbert was driving at this time. He parked the car near the

corner of McGee and South Greene Street, headed west. The plan was that Charles Roberts, James Lee Lawson, and Henry Lee Moore were to go to the jewelry store and rob it, and Herbert Lee Walker was to stay in the car to drive the car away after the robbery. Herbert stated the three, Charles, James, and Henry, left the car, went to the jewelry store, and in a few minutes they came back and stated they saw a policeman, so they returned to the car. They sat there a few minutes and talked. They said then·that they were going back and rob this place, this time for sure, they had to do it."

Under the court's charge, Walker's guilt or innocence was made to depend upon whether he knew Roberts, Moore and Lawson, when they left him shortly before the robbery at Fine's Loan Company, went forth for the purpose of robbing some person or place of business. The State relied upon the devastating confession in the typed statement as substantive evidence of the crucial element of guilty knowledge.

The admissibility of the typed statement must be considered in the light of the legal principles stated below.

"A confession which has been wholly or partially reduced to writing is ordinarily admissible against an accused where it was freely and voluntarily made by him, regardless of the fact that it was reduced to writing by another person, where it was read over to or by accused, or was translated to him, and signed or otherwise admitted by him to be correct." 23 C.J.S., Criminal Law § 833(a).

"If a statement purporting to be a confession is given by accused, and is reduced to writing by another person, before the written instrument will be deemed admissible as the written confession of accused, he must in some manner have indicated his acquiescence in the correctness of the writing itself. If the transcribed statement is not read by or to accused, and is not signed by accused, or in some other manner approved, or its correctness acknowledged, the·instrument is not legally, or *per se,* the confession of accused; and it is not admissible in evidence as the written confession of accused." 23 C.J.S., Criminal Law § 833(b).

In our opinion, the reading verbatim of the typed statement to the jury had the same prejudicial force and impact as if such statement had been identified and received in evidence as an exhibit.

When a statement purporting to be a confession bears the signature of the accused, it is presumed, nothing else appearing, that the accused has read it or has knowledge of its contents. Here, it appears affirmatively *from the State's evidence* that the typed statement was not read by or to defendant; and, notwithstanding the testimony that defendant had stated in effect he knew what was in the state-

ment, it appears. positively *from the State's evidence* that defendant did not have such knowledge.

We have not overlooked the testimony of Sergeant Melton, in response to the court's question, to the effect the typed statement set forth exactly what Walker had said. The statement had been typed the morning of March 31st. Page one was transcribed from notes made by Sergeant Melton the preceding night. Page two was transcribed from notes made by Detective Belvin that morning. The typed statement does not purport to be a verbatim record of statements made by Walker. Page one purports to be a transcript of Sergeant Melton's narration of what Walker had said. Page two purports to be a transcript of detective Belvin's narration of what Walker said Moore had told him. With reference to page two, it is noted there was *no testimony* as to any statements made by Walker the morning of March 31st relating to the alleged robbery. It is noted further that the statements attributed to Walker on page one are in conflict with the oral statements of defendant referred to in Sergeant Melton's testimony. Although it would be permissible for Sergeant Melton or Detective Belvin to refer to a memorandum prepared by him for the purpose of refreshing his recollection as to statements made by defendant, their personal sworn testimony would be the only competent substantive evidence. Under the circumstances, the verbatim reading to the jury of the typed statements was not competent substantive evidence of the matters set forth therein. Moreover, it was not competent as corroborative evidence. As noted above, page one did not corroborate Sergeant Melton. Page two could not corroborate Detective Belvin. Belvin did not testify.

We have considered each of the decisions relied on by the State in its excellent brief and, in addition, *Hall v. State,* 223 Md. 158, 162 A. 2d 751.

In *Jordan v. People,* 151 Colo. 133, 376 P. 2d 699, the court found no error in the reading by an officer of a reporter's transcript of the answers of an accused to questions of the officer. The opinion concludes: "There was no dispute in this case as to the facts recorded. Indeed, Jordan admitted that the statement as recited verbatim to the jury truly set forth the questions and answers. But he does deny that his answers spoke the truth."

In *Fields v. State,* 125 Neb. 290, 250 N.W. 63, the court held it was not error to permit a stenographer, who had recorded the accused's statements in shorthand, to read her shorthand notes from the witness stand notwithstanding the shorthand notes had not been reduced to writing.

In *State v. Ellis,* 232 Ore. 70, 374 P. 2d 461, the court said: "It is undisputed that Ellis both saw and signed the confession. He admits that he read a part of it. He does not deny that he had ample opportunity to read the remainder and to have it explained to him if he so desired. By his signature he acquiesced in its correctness, 23 C.J.S. Criminal Law § 833, page 238, to the extent of rendering it admissible." A distinguishing fact in the present case is that it appears affirmatively from the State's evidence that Walker did not know what was in the typed statement. Moreover, as stated, the officer's testimony as to what Walker *said* is in sharp contrast to statements attributed to Walker in the typed statement.

In *State v. Bindhammer,* 44 N.J. 372, 209 A. 2d 124, followed by *State v. Aviles,* 45 N.J. 152, 211 A. 2d 796, it was held permissible for a court reporter, who had recorded the confession of defendant, to read the questions and answers verbatim to the jury.

In *Hall v. State, supra,* a detective and a court reporter were permitted to testify from their records of confessions made by the accused. The detective testified he "took very full notes of this statement in longhand — in fact, the entire statement, word for word." The reporter testified he made stenotype notes of a statement made by defendant. The detective "was permitted virtually to read to the jury from the longhand statement which he had taken down." The reporter "was permitted to read the questions and answers from his stenotype notes." Although each testified his recorded notes were correct when made, "(n)either felt able to give accurately and fully the statement recorded by him even after refreshing his recollection by reading the statement." The opinion discusses at length the class of evidence referred to by Wigmore as "past recollection recorded," 3 Wigmore, Evidence (Third Edition) §§ 734-755. There is a sharp difference between reading from a transcript which, according to sworn testimony, records the exact words used by an accused, and reading a memorandum that purports to be an interpretative narration of what the officer understood to be the purport of statements made by the accused.

Decisions referred to above differ from the present case in these material respects: (1) Here, the typed statement does not purport to be in the defendant's words but in the words of Sergeant Melton and Detective Belvin. (2) As to page one, testimony of Melton at trial as to defendant's statements on the night of March 30th is in direct conflict with the statements attributed to defendant in the typed statement in respect of the crucial phase of the case. (3) Page two does not purport to record any statement made by defendant with reference to his participation or nonparticipation in the rob-

bery but simply records statements by defendant as to what he had been told by Moore as to events relating to the robbery.

For the reasons stated, the court erred in permitting Sergeant Melton to read into evidence said typed statement, and for prejudicial error in this respect defendant is entitled to a new trial.

New trial.