STATE OF NORTH CAROLINA v. JUAN PABLO GAYTON-BARBOSA

No. COA08-863

(Filed 19 May 2009)

**1. Appeal and Error— Rule 2—variance between indictment and proof**

Defendant's claim of a variance between the indictment and proof was heard under Appellate Rule 2 even though he failed to challenge the sufficiency of evidence at the end of all of the evi-

dence or to argue that the State's proof at trial varied from the allegations of the indictment.

**2. Larceny— stolen gun—ownership**

A larceny conviction was vacated where the indictment alleged that a stolen gun belonged to Minear, who was the victim of an assault in the house which she shared with Leggett, but the evidence showed that Leggett owned the gun and the house.

**3. Burglary and Unlawful Breaking or Entering— instructions—entering a building without authorization**

There was no plain error in the trial court's instruction in a breaking or entering case that entering a building without authorization would be an entry.

**4. Assault— instructions—serious injury—number of wounds**

The trial court did not err in its instructions in an assault prosecution by referring to two gunshot wounds when there was conflicting evidence as to the number of wounds. There was evidence to support the court's statement that two gunshot wounds to the chest "as described in this case" would be a serious injury; furthermore, the jury was charged with weighing the evidence, determining the number of wounds, and deciding whether defendant's actions justified a conviction.

**5. Assault— serious injury—surgery and pain**

An assault victim's injuries were serious, whether she was shot in the chest once or twice, where she underwent exploratory surgery, spent two weeks in the hospital, missed two months of work, and suffered "horrible pain."

**6. Appeal and Error— Rule 2—failure to move to dismiss— inadequate representation allegation**

Defendant's argument that his kidnapping conviction should be set aside was heard under Appellate Rule 2 despite defendant's failure to move to dismiss at trial where defendant also argued ineffective assistance of counsel.

**7. Kidnapping— restraint—separate from assault**

The trial court did not err by denying defendant's motion to set aside a kidnapping conviction where there was sufficient evidence that the restraint of the victim during an assault was separate and apart from the assault.

**8. Constitutional Law— effective assistance of counsel—failure to move to dismiss—no prejudice**

Defendant was not prejudiced by his counsel's failure to make a motion to dismiss a kidnapping charge at the close of the evidence where the evidence was sufficient to support the conviction, and defendant was therefore not deprived of effective assistance of counsel.

Appeal by defendant from judgments entered 25 January 2008 by Judge A. Leon Stanback in Wake County Superior Court. Heard in the Court of Appeals 27 January 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Jason T. Campbell, for the State.*

*Sue Genrich Berry for defendant-appellant.*

HUNTER, ROBERT C., Judge.

Defendant appeals from multiple felony convictions pursuant to a jury trial in Wake County Superior Court. After careful review, we find no error in part, vacate in part, and remand for resentencing.

## Background

Juan Pablo Gayton-Barbosa ("defendant") was brought to trial on 23 January 2008 on the following charges: 1) assault with a deadly weapon with the intent to kill inflicting serious injury through use of a handgun; 2) assault with a deadly weapon inflicting serious injury through use of a baseball bat; 3) felonious breaking or entering; 4) felonious larceny; 5) first degree kidnapping; and 6) possession of a firearm by a convicted felon. Defendant was convicted of all charges on 25 January 2008. Defendant now appeals.

At trial, the State's evidence tended to show that on 6 December 2004, defendant unlawfully entered the home of his former employer, Brandi Leggett ("Leggett"), where she resided with Natasha Minear ("Minear") and Minear's daughter, Madeline Minear ("Madeline"). While defendant waited in the house alone, Minear and Madeline returned home in the early evening. As Minear approached her closed bedroom door, defendant emerged with a bat and a gun, screaming for Leggett. Defendant began striking Minear in the head with a baseball bat. Minear yelled for her daughter to get out of the house and run. Madeline ran to the house of the nearest neighbor, Susan Schaler

STATE v. GAYTON-BARBOSA

[197 N.C. App. 129 (2009)]

("Schaler"), approximately a quarter mile away and told Schaler to call the police.

During the beating, Minear was able to break away from defendant and ran out of the house. Defendant caught her at the bottom of the porch steps, turned her around, and shot her.[1] Minear lost consciousness for an unspecified period of time, and when she regained consciousness, she made her way to Schaler's house. Minear estimated that the attack lasted fifteen minutes.

Emergency services and law enforcement arrived and transported Minear to the hospital, where she had exploratory surgery to ascertain internal damage from the gunshot wound. Minear remained in the hospital for two weeks.

There was no evidence of a forced entry into the house; however, Madeline's baseball bat was missing as well as Leggett's Smith and Wesson .38 caliber revolver.[2] Arrest warrants were issued for defendant, but he was not apprehended for two years. On 11 June 2007, Raleigh police officers stopped defendant's car due to lack of an operator's license. He was then arrested and served with the outstanding warrants.

At trial, defendant testified that he and Leggett had a personal and sexual relationship. He claimed that Minear was jealous of that relationship. Defendant stated that on 6 December 2004, he went to the women's home to give Leggett money for the purpose of renting equipment to clear land belonging to Leggett. Defendant claimed that he was on the property when he saw Minear and Madeline go inside the house. He then entered the house and asked Minear where he could find Leggett. Minear then told defendant that Leggett would be back in thirty minutes, and then she went into her bedroom. She returned with a gun and told defendant that he could no longer be with Leggett. Defendant then picked up a baseball bat and hit Minear to force her to drop her weapon. The two struggled over the gun and it discharged twice. The struggle continued outside; defendant struck Minear again with the bat, and the gun discharged. Defendant then ran away. Defendant stated that because he was an undocumented alien, he was afraid of deportation. He subsequently changed his name and continued to work construction in Raleigh until he was apprehended by police.

---

1. Minear testified that she was shot twice, but the emergency room physician testified that she was shot once.

2. Defendant was subsequently charged with larceny of the handgun.

Analysis

I.

[1] Defendant first argues that the conviction of felonious larceny of the gun used in the attack should be vacated because the indictment erroneously alleged that the gun belonged to Minear, while the evidence at trial tended to show that the gun belonged to Leggett, though it was kept in a bedroom occupied by both women. Defendant did not object to the indictment at trial, nor did he make a motion to dismiss at the close of evidence based on a fatal variance in the indictment.[3]

"The issue of variance between the indictment and proof is properly raised by a motion to dismiss" and a defendant "waive[s] his right to raise this issue by failing to raise the issue at trial." *State v. Baldwin,* 117 N.C. App. 713, 717, 453 S.E.2d 193, 195 (1995), *disc. review denied,* 341 N.C. 653, 462 S.E.2d 518 (1995); *see also State v. Waddell,* 279 N.C. 442, 445, 183 S.E.2d 644, 646 (1971) ("A motion to dismiss is in order when the prosecution fails to offer sufficient evidence the defendant committed the offense charged."); *State v. McGee,* 175 N.C. App. 586, 588, 623 S.E.2d at 784, 786, *disc. review denied,* 360 N.C. 489, 632 S.E.2d 738, *appeal dismissed and disc. review denied,* 360 N.C. 542, 634 S.E.2d 891 (2006).

Although defendant challenged the sufficiency of the evidence to support a felonious larceny conviction at the end of the State's evidence on the grounds that there was no evidence that the firearm in question was not returned to the owner, he never renewed this argument or advanced any other challenge to the felonious larceny charge at trial. As a result, by failing to challenge the sufficiency of the evidence to support a larceny conviction at the end of all of the evidence or to argue that the State's proof at trial varied from the allegations of the felonious larceny indictment returned against him in File No. 07 CRS 41987, defendant waived his right to have this Court consider his variance claim on appeal. *See* N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."); N.C.R.

---

3. We note that if there is a fatal defect on the face of the indictment, as opposed to a fatal variance between the indictment and evidence presented at trial, a defendant may raise that issue for the first time on appeal. *State v. Wilson,* 128 N.C. App. 688, 691, 497 S.E.2d 416, 419 (1998). In the present case, a fatal variance is at issue.

·App. P. 10(b)(3) (A "defendant in a criminal case may not assign as error the insufficiency of the evidence to prove the crime charged unless he moves to dismiss the action, or for judgment as in case of nonsuit, at trial."). Thus, the next issue that needs to be addressed is the extent, if any, to which the Court is entitled to address this variance-based challenge to defendant's felonious larceny conviction on the merits despite the absence of a contemporaneous objection at trial.

In *State v. Brown*, 263 N.C. 786, 787-88, 140 S.E.2d 413, 413 (1965), the Supreme Court granted relief on appeal as the result of a fatal variance relating to the ownership of allegedly stolen property despite the fact that no dismissal motion had been made at trial and that the variance issue had not been the subject of an assignment of error on appeal. Even so, the Supreme Court decided this issue on the merits under its general supervisory authority over the trial courts. The general supervisory authority under which the Supreme Court acted in *Brown* is currently embodied in N.C.R. App. P. Rule 2, which authorizes "either court of the appellate division" to "suspend or vary the requirements or provisions of any of these rules . . . ." Although N.C.R. App. P. Rule 2 is available to prevent "manifest injustice," the Supreme Court has stated that this residual power to vary the default provisions of the appellate procedure rules should only be invoked rarely and in "exceptional circumstances." *State v. Hart*, 361 N.C. 309, 316-17, 644 S.E.2d 201, 205-06 (2007); *see also Dogwood Dev. & Mgmt. Co. v. White Oak Transp. Co.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008). After careful consideration, we will reach the merits of defendant's variance-based claim under N.C.R. App. P. 2 for several reasons.

First, the Supreme Court's decision in *Brown* suggests that fatal variances of the type present here are sufficiently serious to justify the exercise of our authority under N.C.R. App. P. 2. Such a result makes sense given the important notice and double jeopardy protections provided by criminal pleadings such as indictments. Secondly, a variance-based challenge is, essentially, a contention that the evidence is insufficient to support a conviction. The Supreme Court and this Court have regularly invoked N.C.R. App. P. 2 in order to address challenges to the sufficiency of the evidence to support a conviction. *State v. Booher*, 305 N.C. 554, 564, 290 S.E.2d 561, 566 (1982) ("Nevertheless, when this Court firmly concludes, as it has here, that the evidence is insufficient to sustain a criminal conviction, even on a legal theory different from that argued, it will not hesitate to reverse

the conviction *sua sponte*, in order to 'prevent manifest injustice to a party.' " (quoting N.C.R. App. P. 2)); *see also State v. Hudson*, 345 N.C. 729, 732, 483 S.E.2d 436, 438 (1997); *State v. Denny*, 179 N.C. App. 822, 825-26, 635 S.E.2d 438, 441-42 (2006), *aff'd in part and rev'd in part on other grounds*, 361 N.C. 662, 652 S.E.2d 212 (2007); *State v. Richardson*, 96 N.C. App. 270, 271, 385 S.E.2d 194, 195 (1989); *State v. O'Neal*, 77 N.C. App. 600, 604, 335 S.E.2d 920, 923 (1985).

Finally, it is difficult to contemplate a more "manifest injustice" to a convicted defendant than that which would result from sustaining a conviction that lacked adequate evidentiary support, particularly when leaving the error in question unaddressed has double jeopardy implications. Thus, given the peculiar facts of this case, it is appropriate to address defendant's variance-based challenge on the merits.[4]

[2] According to well-established North Carolina law, "the indictment in a larceny case must allege a person who has a property interest in the property stolen and that the State must prove that that person has ownership, meaning title to the property or some special property interest." *State v. Greene*, 289 N.C. 578, 584, 223 S.E.2d 365, 369 (1976). "It is a rule of universal observance in the administration of criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment." *State v. Jackson*, 218 N.C. 373, 376, 11 S.E.2d 149, 151 (1940). In other words, "[t]he allegation and proof must correspond." *Id.* "A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the

---

4. In reaching this conclusion, we recognize that the evidence of defendant's guilt of felonious larceny of Leggett's firearm was substantial, that defendant's felonious larceny conviction was consolidated for judgment with his breaking or entering and first degree kidnapping convictions, and that the sentence that the trial court imposed upon defendant for these three consolidated convictions was at the absolute low end of the presumptive range for an individual convicted of a Class C felony with defendant's prior record level. However, given that the record suggests that defendant may be able to present evidence (as compared to the argument of counsel) that certain mitigating factors are present and that the trial court would have the option of making the sentence imposed upon defendant in these consolidated cases run concurrently with the sentences imposed as a result of defendant's other convictions on re-sentencing, we are unwilling to conclude that there is no reasonable possibility that a re-sentencing in the consolidated cases would not result in a different outcome on remand. In addition, the additional consequences that might flow from the mere fact that defendant was convicted of felonious larceny, such as the potential use of this conviction to impeach defendant's credibility in subsequent judicial proceedings, N.C. Gen. Stat. § 8C-1, Rule 609 (2007), also mitigate in favor of exercising this Court's authority under N.C.R. App. P. 2 in this instance.

offense charged." *Waddell*, 279 N.C. at 445, 183 S.E.2d at 646. "In indictments for injuries to property it is necessary to lay the property truly, and a variance in that respect is fatal." *State v. Mason*, 35 N.C. 341, 342 (1852).

However, if it can be shown that the person named in the indictment, though not the actual owner of the stolen item, had a "special property interest" in the item, then the defect in the indictment will not be fatal. *State v. Craycraft*, 152 N.C. App. 211, 213, 567 S.E.2d 206, 208 (2002) ("The State may prove ownership by introducing evidence that the person either possessed title to the property or had a special property interest. If the indictment fails to allege the existence of a person with title or special property interest, then the indictment contains a fatal variance." (citation omitted)).

Our Courts have evaluated circumstances in which a special property interest has been established. *See e.g. State v. Adams*, 331 N.C. 317, 331, 416 S.E.2d 380, 388 (1992) (spouses have a special property interest in jointly possessed property, though not jointly owned); *State v. Schultz*, 294 N.C. 281, 285, 240 S.E.2d 451, 454-55 (1978) (a "bailee or a custodian" has a special property interest in items in his or her possession); *State v. Salters*, 137 N.C. App. 553, 555-56, 528 S.E.2d 386, 389 (2000) (parents have a special property interest in their children's belongings kept in their residence, but "that special interest does not extend to a caretaker of the property even where the caretaker had actual possession"); *State v. Carr*, 21 N.C. App. 470, 471-72, 204 S.E.2d 892, 893-94 (1974) (where a car was registered to a corporation, the son of the owner of that corporation had a special property interest in the car because he was the sole user of the car and in exclusive possession of it).

Conversely, our Courts have established situations in which a special property interest does not exist. *See e.g. State v. Eppley*, 282 N.C. 249, 259-60, 192 S.E.2d 441, 448 (1972) (owner of a residence did not have a special property interest in a gun kept in his linen closet, but owned by his father); *State v. Downing*, 313 N.C. 164, 167-68, 326 S.E.2d 256, 258-59 (1985) (the owner of a commercial building did not have a special property interest in items stolen from that building as the items were actually owned by the business that rented the building); *Craycraft*, 152 N.C. App. at 214, 567 S.E.2d at 208-09 (landlord did not have a special property interest in furniture he was maintaining after evicting the tenant-owner).

In the case *sub judice*, the evidence tended to show that Leggett owned the gun that was stolen by defendant and the home from which it was stolen. Minear and Leggett lived together and shared the bedroom where the gun was kept. Based upon these facts, we conclude that Minear did not have a special property interest in the gun. While it is arguable that Minear was in shared possession of the gun, she did not have exclusive possession or control of the gun as in seen *Carr*, nor was she a custodian or bailee of the gun. Minear had no shared property rights, as seen between parents and children or between spouses. Accordingly, we must vacate the larceny conviction and remand for resentencing.

## II.

**[3]** Next, defendant assigns error to the following jury instruction with regard to the crime of breaking and/or entering: "[f]irst, that there was either a breaking, breaking a window, or an entry. *Entering the building without the authorization of the owner would be an entry.*" (Emphasis added). Specifically, defendant contends that the last sentence of this instruction expressed the trial court's opinion that the entry element had been satisfied. Defendant did not object to this instruction at trial and requests a plain error review of this assignment of error. " '[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done' . . . ." *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (alteration in original) (quoting *United States v. McCaskill*, 676 F. 2d 995, 1002 (4th Cir. 1982)).

We find there was no error, much less plain error, in the trial court's instruction. The trial court made a correct statement of law that unauthorized entry into the home of another satisfies the entry requirement under N.C. Gen. Stat. § 14-54(a) (2007). *See State v. Perkins*, 181 N.C. App. 209, 217, 638 S.E.2d 591, 597 (2007) (" 'a wrongful entry, *i.e.* without consent, will be punishable under this [statute]' ". (quoting *State v. Locklear*, 320 N.C. 754, 758, 360 S.E.2d 682, 684 (1987)); *see also State v. Fletcher*, 322 N.C. 415, 424, 368 S.E.2d 633, 638 (1988) ("[h]owever weak the evidence may be, it is not an expression of an opinion for the court to make a correct statement of the law").

Because we disagree with defendant's contention that the trial court gave an opinion as to the satisfaction of the breaking or entering element of the crime, this assignment of error is without merit.

### III.

Defendant further argues that, with regard to the charge of assault with a deadly weapon with intent to kill inflicting serious injury pursuant to N.C. Gen. Stat. § 14-32(a) (2007), the following instruction was erroneous: "[a]nd, third, that the defendant inflicted serious injury upon Natasha Minear. Two gunshot wounds to the [chest] as described in this case would be a serious injury." Defendant raises two issues with this assignment of error: 1) whether the trial court erred in stating that there were "two gunshot wounds," when there was conflicting evidence at trial as to whether Minear was shot once or twice; and 2) whether the trial court erroneously stated that the wounds Minear suffered constituted a serious injury.[5] Defendant did not object to the instruction at trial, and therefore, the standard of review is plain error. *Odom*, 307 N.C. at 660, 300 S.E.2d at 378.

### A. Number of Gunshot Wounds

[4] With regard to the first issue, Minear testified that she was shot twice (one bullet passed through her body and the other lodged in her hip), and the prosecution presented to the jury Minear's undergarment, which contained two bullet holes. The trauma surgeon who treated Minear upon her arrival at the hospital testified that Minear was shot once. He based this belief on the trajectory of the bullet that entered her body, though he qualified this statement by saying that he was a clinician and not a forensic pathologist. Defendant testified that the gun discharged multiple times during the altercation with Minear.

Though there was conflicting evidence as to how many times Minear was shot, the State presented Minear's testimony as well as illustrative evidence that defendant shot Minear twice. We find this evidence to be competent and that it supports the trial court's assertion that "[t]wo gunshot wounds to the [chest] *as described in this case* would be a serious injury." (Emphasis added). *See State v. Tucker*, 329 N.C. 709, 723, 407 S.E.2d 805, 813 (1991) ("[a] statement of a valid contention based on competent evidence [is not] an expression of judicial opinion").

---

5. Although defendant fails to sufficiently argue the latter issue, we will address it since defendant assigned error to that portion of the jury instruction pertaining to the serious injury element.

Furthermore, prior to its instruction on assault with a deadly weapon with intent to kill inflicting serious injury, the trial court instructed the jury, "[y]ou are the sole judges of the credibility of each witness. You must decide for yourselves whether to believe the testimony of any witness. You may believe all or any part or none what have [sic] a witness has said on the stand." The jury as the finder of fact was therefore charged with weighing the evidence presented, determining how many times Minear was shot, and deciding whether defendant's actions justified a conviction of the crime charged.

### B. Serious Injury

[5] With regard to the second issue, "[w]hether serious injury has been inflicted must be determined according to the particular facts of each case and is a question the jury must answer under proper instruction." *State v. Marshall*, 5 N.C. App. 476, 478, 168 S.E.2d 487, 489 (1969). However, our Supreme Court has held that, "[i]n the absence of conflicting evidence, a trial judge may instruct the jury that injuries to a victim are serious as a matter of law if reasonable minds could not differ as to their serious nature." *State v. Hedgepeth*, 330 N.C. 38, 54, 409 S.E.2d 309, 318-19 (1991).

In the present case, although there was conflicting evidence regarding the number of gunshot wounds, we find that reasonable minds could not differ as to the serious nature of Minear's injuries. Minear was shot, underwent exploratory surgery, spent two weeks in the hospital, missed two months of work, and suffered "horrible pain." *State v. Owens*, 65 N.C. App. 107, 111, 308 S.E.2d 494, 498 (1983) ("[f]actors our courts consider in determining if an injury is serious include pain, loss of blood, hospitalization and time lost from work"). Assuming, *arguendo*, that Minear was only shot once, her injuries were in fact serious. *See Hedgepeth*, 330 N.C. at 54-55, 409 S.E.2d at 319 (the victim was seriously injured as a matter of law when a bullet was shot through her ear requiring stitches and which resulted in a ringing sound in her ear).

Because we do not find that the trial court gave an improper opinion as to the number of times Minear was shot, nor do we find error in the trial court's classification of Minear's injuries as serious, this assignment of error is without merit.

### IV.

[6] Defendant next contends that the trial court erred in refusing to grant his motion to set aside the verdict with regard to the first

degree kidnapping conviction because defendant's restraint of Minear was inherent to the felonious assaults charged. Defendant did not move to dismiss this charge at the close of all of the evidence at trial. Our appellate rules state, "if a defendant fails to move to dismiss the action or for judgment as in case of nonsuit at the close of all the evidence, he may not challenge on appeal the sufficiency of the evidence to prove the crime charged." N.C.R. App. P. 10(b)(3). However, pursuant to N.C.R. App. P. 2, we will hear the merits of defendant's claim despite the rule violation because defendant also argues ineffective assistance of counsel based on counsel's failure to make the proper motion to dismiss.

[7] "The standard of review of a trial court's denial of a motion to set aside a verdict for lack of substantial evidence is the same as reviewing its denial of a motion to dismiss, i.e., whether there is substantial evidence of each essential element of the crime." *State v. Duncan*, 136 N.C. App. 515, 520, 524 S.E.2d 808, 811 (2000). The evidence must be viewed in the light most favorable to the State. *Id.* at 518, 524 S.E.2d at 810.

In North Carolina, to be convicted of the crime of kidnapping, the perpetrator must "unlawfully confine, *restrain*, or remove from one place to another" the person being kidnapped. N.C. Gen. Stat. § 14-39(a) (2007) (emphasis added). According to our Supreme Court, a restraint for purposes of a kidnapping conviction must be "separate and apart from that which is inherent in the commission of the other felony." *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). Defendant claims that sufficient evidence was not presented at trial to support a charge of first degree kidnapping because any restraint defendant used against Minear was inherent in the assaults committed, not an element of kidnapping. We disagree.

Here, defendant kept Minear from leaving her house by repeatedly striking her with a bat and questioning her about Leggett. When she was able to escape, he chased her, grabbed her, and shot her. Detaining Minear in her home and then again outside was not necessary to effectuate the assaults charged. These acts were committed "separate and apart from that which is inherent in the commission of the other felony." *Id.*; *see also State v. Romero*, 164 N.C. App. 169, 174-75, 595 S.E.2d 208, 212 (2004) (the trial court did not err in refusing to arrest judgment of the defendant's kidnapping conviction where, during an altercation with the defendant, the victim fled the house and the defendant grabbed her hair, pulled her back in the

house, and continued beating her). In sum, there was sufficient evidence presented at trial that defendant's restraint of Minear during the attack was separate and apart from the assaults charged. We therefore find no error in the trial court's denial of defendant's motion to set aside the verdict.

## V.

[8] Defendant's final argument is that he was provided ineffective assistance of counsel because his attorney failed to make a motion to dismiss the kidnapping charge at the close of all the evidence.

To prevail on an ineffective assistance of counsel claim:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable.*"

*State v. Braswell,* 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting *Strickland v. Washington,* 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984)).

As discussed *supra*, the evidence was sufficient to support a kidnapping conviction, therefore defendant was not prejudiced by counsel's failure to make a motion to dismiss at the close of evidence. Because defendant has not shown counsel's assistance to be constitutionally inadequate, this assignment of error is without merit.

## Conclusion

Due to the fatal defect in the larceny indictment, we vacate the conviction and remand for resentencing. As to defendant's remaining arguments, we find no error.

No error in part, vacate in part, and remand for resentencing.

Judges WYNN and ERVIN concur.