NO. COA13-200

NORTH CAROLINA COURT OF APPEALS

Filed:  1 April 2014

STATE OF NORTH CAROLINA

   v.

TIFFANY LEIGH MARION

Swain County
Nos. 08 CRS 935-40

Appeal by defendant from judgments entered 19 March 2012 by Judge Marvin Pope in Swain County Superior Court.  Heard in the Court of Appeals 26 September 2013.

> *Roy Cooper, Attorney General, by Mary Carla Hollis, Assistant Attorney General, for the State.*
>
> *Staples Hughes, Appellate Defender, by Daniel R. Pollitt and Paul M. Green, Assistant Appellate Defenders, for defendant-appellant.*

DAVIS, Judge.

Tiffany Leigh Marion ("Defendant") appeals from her convictions for two counts of first-degree murder, one count of attempted murder, two counts of robbery with a dangerous weapon, and one count of first-degree burglary.  Defendant's primary argument on appeal is that there was insufficient evidence presented at trial to support her convictions under either an acting in concert theory or an aiding and abetting theory.

After careful review, we vacate in part and remand in part as set out below.

## Factual Background

The State's evidence tended to establish the following facts: On 5 August 2008, Defendant traveled from Atlanta, Georgia to Cherokee, North Carolina to visit Harrah's casino. Defendant was accompanied by Jada McCutcheon ("McCutcheon") — a friend from the massage therapy school Defendant attended — and three men, Jeffrey Miles ("Miles"), Jason Johnson ("Johnson"), and a man known as "Freak." The group used ecstasy and smoked marijuana during the car trip and during their entire stay in North Carolina. Some of the ecstasy they used during their trip was mixed with other controlled substances, including heroin and cocaine. Once they arrived, part of the group gambled for several hours at the casino. Afterwards, Miles checked into a hotel room and listed Defendant as his guest. The group congregated in Miles' room over the next several days to "chill" and use drugs.

On 7 August 2008, Miles, Johnson, and "Freak" went to the local Wal-Mart, where they met two local residents, Mark Goolsby ("Goolsby") and Dean Mangold ("Mangold"). Miles asked Goolsby and Mangold if they wanted to take ecstasy and go to the casino

with them, and the two replied affirmatively. Miles eventually brought them back to his hotel room and showed them an AR-15 firearm that he was interested in selling. Mangold suggested trying to sell the gun to a man named Scott Wiggins ("Wiggins") and offered to take them up to see Wiggins. Mangold also told Miles that Wiggins "had drugs." During this conversation, Defendant was lying on the bed and seemed "messed up."

Goolsby, Mangold, Miles, Johnson, McCutcheon, and Defendant got into their van and drove to Wiggins' home. During the drive, Mangold told Miles that Wiggins owed him money and that Wiggins had "all this stuff" and "a lot of money." Miles was driving the van and parked it on a gravel logging road where it could not be seen from Wiggins' house. Everyone exited the vehicle, and Miles told everyone that they were "fixin' to hit a lick," meaning that they were about to rob someone. Defendant stayed by the van and told McCutcheon that she "didn't want to go up there."

Johnson kicked in the door of the residence and proceeded to hold Wiggins and another person present in Wiggins' home, Michael Heath Compton ("Compton"), at gunpoint while the others began gathering valuables. While the group was searching for valuables, another person, Timothy Dale Waldroup ("Waldroup"),

drove up to the house and was escorted into the residence at gunpoint. Miles shot Wiggins, Compton, and Waldroup during the course of the burglary, and only Waldroup survived. Goolsby and Mangold heard the gunshots, "got scared," and left the scene. Defendant then left the area by the van where she had been waiting, walked towards the house, found Johnson, and informed him that Goolsby and Mangold had left. She then returned to the van.

Johnson, Miles and McCutcheon proceeded to load the stolen items into Wiggins' pickup truck. Defendant attempted to drive the van but was unable to release the parking brake so McCutcheon drove the vehicle. Defendant and the others traveled back to Georgia and moved the stolen items into Miles' apartment.

On 18 August 2008, the Swain County grand jury returned bills of indictment charging Defendant with two counts of first-degree murder, one count of attempted murder, one count of first-degree burglary, two counts of robbery with a dangerous weapon, and three counts of first-degree kidnapping. The matter came on for a jury trial during the February and March 2012 Criminal Sessions of Swain County Superior Court.

Defendant offered evidence at trial and testified in her

defense. She testified that she was using drugs during the entire trip and did not learn what had happened at Wiggins' house until she returned to Georgia on 11 August 2008. She further stated that she never heard or was a part of any conversations regarding a plan to rob Wiggins and explained that she "had no idea what was going on" when the group went to Wiggins' house, "had nothing to do with it," and "would never, ever be a part of anything like this."

The jury found Defendant guilty of two counts of first-degree murder, one count of attempted murder, one count of first-degree burglary, and two counts of robbery with a dangerous weapon. Defendant was found not guilty of the three kidnapping charges. The trial court entered judgments based on the jury's verdicts, sentencing Defendant to two consecutive terms of life imprisonment without parole for the first-degree murder charges, a presumptive-range term of 125 to 159 months for the attempted murder conviction, and presumptive-range terms of 51 to 71 months imprisonment for each of the remaining charges. Defendant gave timely written notice of appeal.

## Analysis

Defendant raises a number of arguments on appeal. We address each in turn.

## I. Defendant's Statement to Detective Posey

Defendant first argues that the trial court erred by allowing the State to impeach her trial testimony through the use of a "written instrument[] the prosecutor improperly characterized, described, and referred to in court as 'defendant's written statement.'" Defendant acknowledges that she did not object to the use of this evidence at trial and therefore seeks review under the plain error doctrine. Under plain error review, Defendant bears the burden of showing that the alleged error was such that it "had a probable impact on the jury's finding that the defendant was guilty." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations and quotation marks omitted).

Relying on *State v. Walker*, 269 N.C. 135, 152 S.E.2d 133 (1967), Defendant contends that the trial court committed plain error by admitting into evidence notes prepared by Detective Carolyn Posey ("Detective Posey") memorializing a conversation with Defendant and allowing the State to impeach Defendant's testimony with those notes.

In *Walker*, our Supreme Court held as follows:

> If a statement purporting to be a confession is given by [the] accused, and is reduced to writing by another person, before the written instrument will be deemed admissible

> as the written confession of [the] accused,
> he must in some manner have indicated his
> acquiescence in the correctness of the
> writing itself. If the transcribed
> statement is not read by or to [the]
> accused, and is not signed by [the] accused,
> or in some other manner approved, or its
> correctness acknowledged, the instrument is
> not legally, or *per se*, the confession of
> [the] accused; and it is not admissible in
> evidence as the written confession of [the]
> accused.

*Id.* at 139, 152 S.E.2d at 137 (citation and quotation marks omitted).

Our Supreme Court has explained, however, that the authentication requirements outlined in *Walker*, and later reiterated in *State v. Wagner*, 343 N.C. 250, 470 S.E.2d 33 (1996), do not apply to statements made by a defendant that are not confessions. *See State v. Moody*, 345 N.C. 563, 579, 481 S.E.2d 629, 637 (holding that "the requirements outlined in *Wagner* do not apply" because "[a]t no time was [the law enforcement officer's] record of his interview with defendant characterized as defendant's written confession"), *cert. denied*, 522 U.S. 871, 139 L.Ed.2d 125 (1997).

Here, Detective Posey testified that she took notes while she and Deputy Scott Cody transported Defendant from Georgia to North Carolina on 20 August 2008. Detective Posey explained that the notes were taken in shorthand, and they were "not

exactly word for word." She replied affirmatively when asked if what she wrote was "as best [as] you can recall . . . what [Defendant] said while she was in the car."

After reviewing the transcript and record, we have found no indication that Defendant's statements to Detective Posey were ever characterized as Defendant's confession. A confession is "an acknowledgment in express words, by the accused in a criminal case, of the truth of the guilty fact charged or of some essential part of it." *State v. Jones*, 294 N.C. 642, 659, 243 S.E.2d 118, 128 (1978) (citation and quotation marks omitted). Defendant's statements to Detective Posey, conversely, did not admit her guilt or participation in the crimes. Rather, the notes memorializing the conversation reflected Defendant's assertions that she did not know "anything about robbing anybody"; "did not even know anyone had passed"; that "nobody said anything to [her] about guns"; and that she only knew what had happened afterwards because McCutcheon told her.

A defendant's statement that is not purported to be a written confession is admissible under the exception to the hearsay rule for statements by a party-opponent and does not require the defendant's acknowledgement or adoption. *Moody*, 345

N.C. at 579, 481 S.E.2d at 637; *see State v. Randolph*, ___ N.C. App. ___, ___, 735 S.E.2d 845, 852 (2012) ("[S]o long as oral statements are not obtained in violation of the constitutional protections against self-incrimination or due process, a defendant's own statement is admissible when offered against him at trial as an exception to the hearsay rule." (citation and quotation marks omitted)), *appeal dismissed*, 366 N.C. 562, 738 S.E.2d 392 (2013). Accordingly, we hold that the trial court did not commit error, much less plain error, by allowing the State to impeach Defendant with her prior statements to Detective Posey.

**II. Failure to Arrest Judgment on a Felony Conviction**

Defendant's second argument on appeal is that the trial court erred by failing to arrest judgment with respect to any of her felony convictions. Defendant asserts that because she was convicted of two counts of first-degree felony murder, the trial court was required to arrest judgment on at least two of her felony convictions pursuant to the felony murder merger doctrine. The State concedes that failing to arrest judgment on any of Defendant's felony offenses was error but argues that judgment need be arrested on only *one* of the felonies.

"The felony murder merger doctrine provides that when a

defendant is convicted of felony murder only, the underlying felony constitutes an element of first-degree murder and merges into the murder conviction." *State v. Rush*, 196 N.C. App. 307, 313-14, 674 S.E.2d 764, 770 (citation, quotation marks, and brackets omitted), *disc. review denied*, 363 N.C. 587, 683 S.E.2d 706 (2009). Thus, if the defendant's conviction for first-degree murder is based solely upon the theory of felony murder, he or she "cannot be sentenced on the underlying felony in addition to the sentence for first-degree murder." *Id.* at 314, 674 S.E.2d at 770 (citation and quotation marks omitted). In this case, because Defendant's first-degree murder convictions were exclusively premised on a felony murder theory, the trial court erred in entering judgment on all of Defendant's felonies.

However, we are not persuaded by Defendant's contention that judgment must be arrested with respect to *all* of her felony convictions. Defendant asserts that because the trial court's instructions were disjunctive and permitted the jury to find Defendant guilty of felony murder if it found that she committed "the felony of robbery with a firearm, burglary, and/or kidnapping," the trial court should have arrested judgment on all of the felony convictions on the theory that they all could have served as the basis for the felony murder convictions.

Our Court rejected this same argument in *State v. Coleman*, 161 N.C. App. 224, 587 S.E.2d 889 (2003). We explained that the disjunctive instruction was not error — and did not require the trial court to arrest judgment with respect to all of the defendant's felony convictions — because the defendant's right to a unanimous verdict was not violated and the instruction merely allowed the jury to convict the defendant of a single wrong by alternative acts. *Id.* at 234-35, 587 S.E.2d at 896.

Indeed, this Court has explicitly held that if multiple felonies support a felony murder conviction, the merger rule only "requires the trial court to arrest judgment on at least one of the underlying felony convictions . . . ." *State v. Dudley*, 151 N.C. App. 711, 716, 566 S.E.2d 843, 847 (2002), *appeal dismissed and disc. review denied*, 356 N.C. 684, 578 S.E.2d 314 (2003). In cases where the jury does not specifically determine which conviction serves as the underlying felony, we have held that the trial court may, in its discretion, select the felony judgment to arrest. *See Coleman*, 161 N.C. App. at 236, 587 S.E.2d at 897 ("[W]here no specific underlying felony was noted in the jury instructions on felony murder, and where there are multiple felony convictions which could serve as the underlying felony for purposes of the felony

murder conviction, it is in the discretion of the trial court as to which felony will serve as the underlying felony for purposes of sentencing."). We therefore remand with instructions that the trial court arrest judgment with respect to at least one of Defendant's felony convictions "in such a manner that would not subject [D]efendant to a greater punishment." *Dudley*, 151 N.C. App. at 716, 566 S.E.2d at 847.

**III. Attempted Murder**

Defendant also argues that the trial court erred by entering judgment on the jury's guilty verdict of attempted murder. The State concedes error on this issue as well.

The trial court's instruction concerning the attempted murder offense was based solely upon a theory of attempted felony murder. This Court has held that "the offense of 'attempted first degree felony murder' does not exist under our law." *State v. Lea*, 126 N.C. App. 440, 449, 485 S.E.2d 874, 879 (1997) (cited with approval by *State v. Coble*, 351 N.C. 448, 452, 527 S.E.2d 45, 48 (2000)). In so holding, we reasoned that the offense of felony murder "does not require that the defendant intend the killing, only that he or she intend to commit the underlying felony. *Lea*, 126 N.C. App. at 449, 485 S.E.2d at 880. Attempt, on the other hand, requires the State

to establish that the defendant specifically intended to commit the crime charged. *Id.* Thus, "a charge of 'attempted felony murder' is a logical impossibility in that it would require the defendant to intend what is by definition an unintentional result." *Id.* at 450, 485 S.E.2d at 880.

Because attempted first-degree felony murder does not exist under the laws of North Carolina, we vacate Defendant's conviction with respect to this charge.

## IV. Sufficiency of the Evidence of Acting in Concert or Aiding and Abetting

Defendant next asserts that all of her convictions must be vacated because the State failed to present substantial evidence concerning her involvement in the crimes under either the theory of (1) acting in concert; or (2) aiding and abetting. Defendant's counsel did not make a motion to dismiss the charges at the close of all of the evidence, thereby failing to preserve this issue for appellate review. *See* N.C.R. App. P.10(a)(3) ("[I]f a defendant fails to move to dismiss the action . . . at the close of all the evidence, defendant may not challenge on appeal the sufficiency of the evidence to prove the crime charged."). However, because Defendant also brings forward an ineffective assistance of counsel claim based on her counsel's failure to make the motion to dismiss, we elect to review

Defendant's sufficiency of the evidence argument pursuant to Rule 2 of the North Carolina Rules of Appellate Procedure. *See State v. Gayton-Barbosa*, 197 N.C. App. 129, 140, 676 S.E.2d 586, 593 (2009) ("[P]ursuant to N.C.R. App. P.2, we will hear the merits of defendant's claim despite the rule violation because defendant also argues ineffective assistance of counsel based on counsel's failure to make the proper motion to dismiss.").

Here, the State relied on two theories to establish Defendant's criminal responsibility for the murder, burglary, and robbery with a dangerous weapon offenses: (1) acting in concert, and (2) aiding and abetting. Under a theory of acting in concert, a defendant may be found guilty of an offense if she "is present at the scene of the crime and . . . [s]he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Barnes*, 91 N.C. App. 484, 487, 372 S.E.2d 352, 353 (1988) (citation and quotation marks omitted), *aff'd as modified*, 324 N.C. 539, 380 S.E.2d 118 (1989).

Under a theory of aiding and abetting, the State must present evidence "(1) that the crime was committed by another; (2) that the defendant knowingly advised, instigated, encouraged, procured, or aided the other person; and (3) that

the defendant's actions or statements caused or contributed to the commission of the crime by the other person." *State v. Bond*, 345 N.C. 1, 24, 478 S.E.2d 163, 175 (1996), *cert. denied*, 521 U.S. 1124, 138 L.Ed.2d 1022 (1997).

> A person may be guilty as an aider and abettor if that person . . . accompanies the actual perpetrator to the vicinity of the offense and, with the knowledge of the actual perpetrator, remains in that vicinity for the purpose of aiding and abetting in the offense and sufficiently close to the scene of the offense to render aid in its commission, if needed, or to provide a means by which the actual perpetrator may get away from the scene upon the completion of the offense.

*State v. Pryor*, 59 N.C. App. 1, 7, 295 S.E.2d 610, 615 (1982) (citation and quotation marks omitted).

When determining whether there is substantial evidence to sustain a conviction,

> all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State is to be considered by the court in ruling on the motion. The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be drawn therefrom[.]

*State v. Spencer*, 192 N.C. App. 143, 147, 664 S.E.2d 601, 604 (2008) (internal citation and quotation marks omitted), *disc. review denied*, 363 N.C. 380, 680 S.E.2d 208 (2009).

Evidence offered by the defendant is disregarded when considering a motion to dismiss unless the evidence is "favorable to the State or does not conflict with the State's evidence." *State v. Scott*, 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002). Finally, our Supreme Court has made clear that "[c]ircumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence." *State v. Fritsch*, 351 N.C. 373, 379, 526 S.E.2d 451, 455 (citation and quotation marks omitted), *cert. denied*, 531 U.S. 890, 148 L.Ed.2d 150 (2000).

We conclude that the evidence offered at trial, taken in the light most favorable to the State, was sufficient to support Defendant's convictions under both theories of criminal liability. Although Defendant argues that she never said anything to the other participants to indicate that she had a common plan or an intent to aid them in their crimes, neither acting in concert nor aiding and abetting require a defendant to expressly vocalize her assent to the criminal conduct. *See State v. Hill*, 182 N.C. App. 88, 93, 641 S.E.2d 380, 385 (2007) ("The theory of acting in concert does not require an express agreement between the parties. All that is necessary is an implied mutual understanding or agreement to do the crimes."

(citation and quotation marks omitted)); *State v. Allen*, 127 N.C. App. 182, 185, 488 S.E.2d 294, 296 (1997) ("Communication of intent [to aid or abet] to the perpetrator may be inferred from the defendant's actions and from his relation to the perpetrator. . . . [A defendant's] presence alone may be sufficient when the [defendant] is a friend of the perpetrator and the perpetrator knows the friend's presence will be regarded as encouragement and protection.").

The State offered evidence, through the testimony of several of the other participants,[1] that Defendant (1) was present for the discussions and aware of the group's plan to rob Wiggins; (2) noticed Mangold's gun because it was similar to the one "she had got shot with prior in her life;" (3) was sitting next to Miles in the van when he loaded his shotgun; (4) told the group that she did not want to go up to the house but remained outside the van; (5) walked toward the house to inform the others that Mangold and Goolsby had fled; (6) told McCutcheon and Johnson "y'all need to come on;" (7) attempted to start the van when McCutcheon returned but could not release the parking brake; and (8) assisted in unloading the goods stolen

---

[1] McCutcheon died before Defendant's trial, but her interview with law enforcement officers on 17 September 2008 was introduced at trial under Rule 804 of the North Carolina Rules of Evidence.

from Wiggins' house into Miles' apartment once they returned to Georgia.

This evidence — and the reasonable inferences that may be drawn from it — is relevant evidence that a reasonable juror could conclude was adequate to support the conclusion that Defendant remained in the vicinity of the crime scene, was willing to render assistance, and did, in fact, aid in the perpetration of the offenses by informing the others that Goolsby and Mangold "ran off" and encouraging everyone to hurry up and leave. Defendant's testimony that she was not aware of what was happening and did not act pursuant to a common plan or intend to offer assistance is not considered when ruling on the sufficiency of the evidence and did not warrant a dismissal of the charges. *See State v. Agustin*, ___ N.C. App. ___, ___, 747 S.E.2d 316, 318 (2013) ("Contradictions and discrepancies do not warrant dismissal of the case; rather, they are for the jury to resolve. Defendant's evidence, unless favorable to the State, is not to be taken into consideration." (citation and quotation marks omitted)). Thus, the determination of whether Defendant was criminally responsible for these offenses under either an aiding and abetting theory or an acting in concert theory was a question for the jury.

## V. Ineffective Assistance of Counsel

Finally, Defendant contends that her trial counsel's failure to make a motion to dismiss at the close of all of the evidence deprived her of her constitutional right to effective assistance of counsel. We disagree.

In order to establish ineffective assistance of counsel, "[a] defendant must first show that [her] defense counsel's performance was deficient and, second, that counsel's deficient performance prejudiced [her] defense." *State v. Thompson*, 359 N.C. 77, 115, 604 S.E.2d 850, 876 (2004), *cert. denied*, 546 U.S. 830, 163 L.Ed.2d 80 (2005).

> Deficient performance may be established by showing that counsel's representation fell below an objective standard of reasonableness. Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Allen*, 360 N.C. 297, 316, 626 S.E.2d 271, 286 (internal citations and quotation marks omitted), *cert. denied*, 549 U.S. 867, 166 L.Ed.2d 116 (2006).

However, "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of

counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985).

As discussed above, the State presented sufficient evidence to withstand a motion to dismiss the charges against Defendant under the acting in concert and aiding and abetting theories of criminal liability. As such, we cannot conclude that Defendant was prejudiced by her counsel's failure to make a proper motion to dismiss the charges. Therefore, Defendant's argument is overruled.

## Conclusion

For the reasons stated above, we vacate Defendant's conviction for attempted murder and remand to the trial court so that it may arrest judgment with respect to at least one of Defendant's felony convictions pursuant to the merger doctrine.

NO ERROR IN PART; VACATED IN PART; REMANDED IN PART.

Judges HUNTER, JR. and ERVIN concur.