STROUD, Judge.
 

 *564
 
 Thomas Craig Campbell ("defendant") appeals from a judgment entered on a jury verdict finding him guilty of breaking or entering a place of religious worship with intent to commit a larceny therein and larceny after breaking or entering. Defendant contends that (1) the indictment for larceny was fatally defective because it failed to allege that Manna Baptist Church was an entity capable of owning property; (2) insufficient evidence supports his conviction for breaking or entering a place of religious worship with intent to commit a larceny therein; (3) he was deprived of effective assistance of counsel, because his counsel failed to object to the admission of evidence that defendant had committed a separate breaking or entering offense; (4) the trial court erred in failing to dismiss the larceny charge due to a fatal variance as to the ownership of the property; (5) insufficient evidence supports his larceny conviction; and (6) the trial court violated his constitutional right to a unanimous jury verdict with respect to the larceny charge. On 1 July 2014, this Court agreed with defendant on issues (1) and (2) and therefore failed to address defendant's remaining arguments.
 
 State v. Campbell,
 
 ---N.C.App. ----, ----,
 
 759 S.E.2d 380
 
 , 387 (2014). But on 11 June 2015, on discretionary review, the North Carolina Supreme Court reversed this Court's decision and held that (1) the larceny indictment was valid on its face even though it did not specify that Manna Baptist Church was an entity capable of owning property; and (2) sufficient evidence supported defendant's conviction for breaking or entering a place of religious worship with intent to commit a larceny therein.
 
 State v. Campbell,
 

 368 N.C. 83
 
 , ----,
 
 772 S.E.2d 440
 
 , 444-45 (2015). The
 
 *527
 
 North Carolina Supreme Court remanded the case to this Court for consideration of any remaining issues.
 
 See
 

 id.
 

 at ----,
 
 772 S.E.2d at 445
 
 .
 

 Accordingly, we examine the remaining issues (3), (4), (5), and (6). We disagree with defendant on issue (3) but agree with defendant
 
 *565
 
 on issue (4). Because we agree with defendant on issue (4), we do not address issues (5) and (6). We find no error in part, vacate in part, and remand.
 

 I. Background
 

 We review our discussion of the factual and procedural background from our previous opinion:
 

 On 8 October 2012, defendant was indicted for breaking or entering a place of religious worship and larceny after breaking or entering. The larceny indictment alleged that on 15 August 2012 defendant "willfully and feloniously did steal, take, and carry away a music receiver, microphones, and sounds [sic] system wires, the personal property of Andy [Stevens] and Manna Baptist Church, pursuant to a breaking or entering in violation of N.C.G.S. 14-54.1(a)." Defendant pled not guilty and proceeded to jury trial.
 

 At trial, the State's evidence tended to show that Pastor Andy [Stevens] of Manna Baptist Church, located on Burke Road in Shelby, North Carolina, discovered after Sunday services on 19 August 2012 that a receiver, several microphones, and audio cords were missing. The cords were usually located at the front of the church, by the sound system, or in the baptistery changing area. It appeared that the sound system had been opened up and items inside had been moved around. Pastor [Stevens] found a wallet in the baptistery changing area that contained a driver's license belonging to defendant.
 

 Pastor [Stevens] testified that when the church secretary arrived on Thursday morning earlier that week, she had noticed that the door was unlocked. She assumed that it had been left unlocked after Wednesday night services, which had ended around 9 p.m. Although the front door is normally locked at night, on cross-examination, Pastor [Stevens] admitted that the church door had been left unlocked overnight before. Pastor [Stevens] said that the secretary did not notice anything amiss on Thursday morning.
 

 After Pastor [Stevens] realized that the audio equipment was missing he called the Cleveland County Sheriff's
 
 *566
 
 Office. Deputy Jordan Bowen responded to the scene. The deputy examined the premises but found no signs of forced entry. He recovered defendant's wallet from the pastor.
 

 Investigator Jessica Woosley went to speak with defendant at the Cleveland County Detention Center, where he was being held on an unrelated breaking or entering charge. When Investigator Woosley introduced herself, defendant said, "[T]his can't possibly be good. What have I done now that I don't remember?" Investigator Woosley read defendant his
 
 Miranda
 
 rights and defendant invoked his right to counsel. Investigator Woosley tried to end the interview, but defendant continued talking.
 

 Defendant admitted that he had been to Manna Baptist Church on the night in question, but stated that he could not remember what he had done there. He explained that he had mental issues and blacked out at times. Defendant claimed to be a religious man who had been "on a spiritual journey." He said that he remembered the door to the church being open, but that he did not remember doing anything wrong.
 

 After speaking with defendant, Investigator Woosley searched through a pawn shop database for any transactions involving items matching those missing from the church but did not find anything. The missing items were never recovered.
 

 At the close of the State's evidence, defendant moved to dismiss the charges. The trial court denied the motion. Defendant then elected to present evidence and testify on his own behalf. Defendant testified that he was a [fifty-one-year-old] man with a high school education and one semester of college. He said that on 15 August 2012, he had been asked to leave the home he was living in, so he packed his possessions in a duffel bag and left. He
 
 *528
 
 started walking toward a friend's house but dropped the bag in a ditch because it was too heavy to carry long-distance.
 

 Around midnight, defendant arrived at his friend's house, but his friend's girlfriend asked him to leave, so he did. Defendant continued walking down the road until
 
 *567
 
 he came upon the church. He noticed that the door was cracked slightly and a "sliver of light" was emanating from within. Defendant explained that after all his walking, he was thirsty and tired, so he went into the church looking for water and sanctuary. He said that while he was inside, he got some water, prayed, and slept. He claimed that he did not intend to take anything and did not take anything when he left around daybreak.
 

 After leaving the church, defendant began walking down the road again. He soon began having chest pains and called 911. Defendant explained that he was on a variety of medications at the time, including powerful psychotropic medication. An ambulance arrived and took him to Cleveland Memorial Hospital.
 

 Calvin Cobb, the Emergency Medical Technician (EMT) who responded to defendant's call, also testified on defendant's behalf. Mr. Cobb said that they received a dispatch call around 6:30 a.m. When they arrived at the intersection of Burke Road and River Hill Road, they saw defendant near an open field, sitting on the back of a fire truck that had been first to respond. Defendant told Mr. Cobb that he had been wandering all night. Mr. Cobb noticed that defendant looked disheveled and worn out, and that defendant had worn through the soles of his shoes. Mr. Cobb did not see defendant carrying anything and did not find anything in his pockets.
 

 After defendant rested his case, the State called another officer in rebuttal. The State wanted to offer his testimony regarding defendant's prior breaking or entering arrest. The trial court asked the State to explain the relevance of the prior incident. The State argued that it contradicted part of defendant's testimony regarding what happened before he got to the church, but did not elaborate on how it contradicted defendant's testimony and did not otherwise explain its relevance. The trial court excluded the rebuttal testimony under [ North Carolina Rule of Evidence 403 ]. At the close of all the evidence, defendant renewed his motion to dismiss all charges, which the trial court again denied.
 

 The jury found defendant guilty of both charges. The trial court consolidated the charges for judgment and
 
 *568
 
 sentenced defendant to a split sentence of 13-25 months [of] imprisonment, suspended for 24 months of supervised probation, and an active term of 140 days in jail. Defendant gave timely written notice of appeal.
 

 Campbell,
 
 --- N.C.App. at ----,
 
 759 S.E.2d at 382-83
 
 (first alteration in original).
 

 II. Discussion
 

 We examine defendant's remaining issues (3), (4), (5), and (6). Defendant contends that (3) he was deprived of effective assistance of counsel, because his counsel failed to object to the admission of evidence that defendant had committed a separate breaking or entering offense; (4) the trial court erred in failing to dismiss the larceny charge due to a fatal variance as to the ownership of the property; (5) insufficient evidence supports his larceny conviction; and (6) the trial court violated his constitutional right to a unanimous jury verdict with respect to the larceny charge. We disagree with defendant on issue (3) but agree with defendant on issue (4). Because we agree with defendant on issue (4), we do not address issues (5) and (6).
 

 A. Ineffective Assistance of Counsel ("IAC")
 

 Defendant argues that his trial counsel rendered ineffective assistance, because he failed to object to the admission of evidence of defendant's breaking or entering a house on the same night that he entered the church. Defendant argues that his trial counsel should have (1) filed a motion
 
 in limine
 
 objecting to this evidence; (2) moved to redact the audio recording of defendant's interview with Investigator Woosley, in which he admits to breaking or entering the house; and (3) objected when the prosecutor
 
 *529
 
 cross-examined defendant about breaking or entering the house. Because defendant complains of the admission of evidence, we need no further factual development to address defendant's IAC claim.
 
 See
 

 State v. Davis,
 

 158 N.C.App. 1
 
 , 15,
 
 582 S.E.2d 289
 
 , 298 (2003) ("[IAC] claims may ... be raised on direct appeal when the cold record reveals that no further factual development is necessary to resolve the issue.").
 

 To prevail in a claim for IAC, a defendant must show that his (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense, meaning counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 

 *569
 
 As to the first prong of the IAC test, a strong presumption exists that a counsel's conduct falls within the range of reasonable professional assistance. Further, if there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient.
 

 State v. Smith,
 

 230 N.C.App. 387
 
 , 390,
 
 749 S.E.2d 507
 
 , 509 (2013) (citations, quotation marks, and brackets omitted),
 
 cert. denied,
 

 367 N.C. 532
 
 ,
 
 762 S.E.2d 221
 
 (2014).
 

 Defendant specifically contends that he received ineffective assistance of counsel, because the evidence was inadmissible under North Carolina Rules of Evidence 403 and 404(b). N.C. Gen.Stat. § 8C-1, Rules 403, 404(b) (2013). Rule 404(b) provides:
 

 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident.
 

 Id.
 

 § 8C-1, Rule 404(b). Although Rule 404(b) is a rule of inclusion, it is still "constrained by the requirements of similarity and temporal proximity."
 
 State v. Beckelheimer,
 

 366 N.C. 127
 
 , 131,
 
 726 S.E.2d 156
 
 , 159 (2012). The State argues that this evidence was admissible for the purpose of proving motive, plan, and intent. In the police interview, defendant admitted that he broke into a house on the same night that he entered the church. This evidence tends to show that defendant's intent in entering the church was to commit a larceny therein and tends to contradict defendant's later testimony that he entered the church for sanctuary. Because the two breaking or entering offenses occurred on the same night and because the evidence tends to show that defendant's intent in entering the church was to commit a larceny therein, we hold that Rule 404(b) does not bar the admission of this evidence.
 
 See
 
 N.C. Gen.Stat. § 8C-1, Rule 404(b) ;
 
 Beckelheimer,
 

 366 N.C. at 131
 
 ,
 
 726 S.E.2d at 159
 
 .
 

 Defendant also argues that this evidence was inadmissible under Rule 403. N.C. Gen.Stat. § 8C-1, Rule 403. Rule 403 provides: "Although relevant, evidence may be excluded if its probative value is
 
 substantially
 
 outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."
 

 *570
 

 Id.
 

 § 8C-1, Rule 403 (emphasis added). "Unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, on an emotional one."
 
 State v. Baldwin,
 
 --- N.C.App. ----, ----,
 
 770 S.E.2d 167
 
 , 171 (2015) (brackets omitted). When defendant's trial counsel objected to this evidence during the State's rebuttal, the trial court excluded the evidence under Rule 403. Defendant argues that this ruling shows that his trial counsel should have objected earlier to this evidence. But in responding to defendant's objection, the prosecutor failed to make a Rule 404(b) argument, and the trial judge misquoted Rule 403 when he ruled that "[i]ts prejudicial effect outweighs the probative value." Because defendant committed the two breaking or entering offenses on the same night and because the evidence tends to show that defendant's intent in entering the church was to commit a larceny therein, we hold that its probative
 
 *530
 
 value was not substantially outweighed by the danger of unfair prejudice.
 
 See
 
 N.C. Gen.Stat. § 8C-1, Rule 403. Accordingly, we hold that this evidence was admissible under Rule 403.
 

 Defendant further argues that his trial counsel should have requested a limiting instruction that the jury could not consider the evidence of defendant's breaking into a house as evidence of his character to act in conformity therewith. We agree that a limiting instruction would have mitigated any potential unfair prejudice resulting from the evidence's admission.
 
 See
 

 State v. Hyatt,
 

 355 N.C. 642
 
 , 662,
 
 566 S.E.2d 61
 
 , 74-75 (2002),
 
 cert. denied,
 

 537 U.S. 1133
 
 ,
 
 123 S.Ct. 916
 
 ,
 
 154 L.Ed.2d 823
 
 (2003). But we hold that any resulting unfair prejudice did not substantially outweigh the evidence's probative value, given the temporal proximity of the breaking or entering offenses and the evidence's tendency to show that defendant's intent in entering the church was to commit a larceny therein. Additionally, we note that in the context of impeachment evidence, the trial court properly instructed the jury to not consider a prior conviction as evidence of defendant's guilt in this case.
 

 Because defendant has failed to show that the evidence's admission was error, we hold that he cannot prevail on an IAC claim.
 
 See
 

 State v. Chappelle,
 

 193 N.C.App. 313
 
 , 330,
 
 667 S.E.2d 327
 
 , 337,
 
 appeal dismissed and disc. review denied,
 

 362 N.C. 684
 
 ,
 
 670 S.E.2d 568
 
 (2008).
 
 [1]
 

 *571
 
 B. Fatal Variance as to the Ownership of the Stolen Property
 

 i. Rule 2
 

 Defendant next contends that the trial court erred in failing to dismiss the larceny charge due to a fatal variance between the indictment and the evidence as to the ownership of the stolen property. Defendant's trial counsel failed to raise this issue at trial, so defendant requests that we invoke North Carolina Rule of Appellate Procedure 2, or, alternatively, that we review this issue for ineffective assistance of counsel. N.C.R.App. P. 2 ("To prevent manifest injustice to a party ... either court of the appellate division may ... suspend or vary the requirements or provisions of any of these rules in a case pending before it[.]"). In
 
 State v. Gayton-Barbosa,
 
 this Court invoked Rule 2 to review a similar fatal variance argument and held that this type of error is "sufficiently serious to justify the exercise of our authority under [ Rule 2 ]."
 
 197 N.C.App. 129
 
 , 134,
 
 676 S.E.2d 586
 
 , 589-90 (2009). Accordingly, we exercise our discretion under Rule 2 to review this issue.
 

 ii. Analysis
 

 Defendant contends that the trial court erred in failing to dismiss the larceny charge due to a fatal variance as to the ownership of the stolen property. Defendant specifically argues that a fatal variance occurred "because the State never proved the property was owned by both Andy Stevens and Manna Baptist Church." Defendant relies on
 
 State v. Hill
 
 for the proposition that where an indictment alleges multiple owners, the State must prove that there were in fact multiple owners.
 
 See
 

 79 N.C. 656
 
 , 658-59 (1878).
 

 In
 
 Hill,
 
 the indictment alleged that the stolen property belonged to "Lee Samuel and others," but the evidence at trial showed that the stolen property belonged to Lee Samuel alone.
 
 79 N.C. at 658
 
 . Our Supreme Court held that this inconsistency constituted a fatal variance.
 

 Id.
 

 at 658-59
 
 .
 
 Hill
 
 has been consistently cited and followed as binding precedent by North Carolina courts since 1878.
 
 See, e.g.,
 

 State v. Albarty,
 

 238 N.C. 130
 
 , 131-32,
 
 76 S.E.2d 381
 
 , 382 (1953) ;
 
 State v. Hicks,
 

 233 N.C. 31
 
 , 34,
 
 62 S.E.2d 497
 
 , 499 (1950) ;
 
 State v. Williams,
 

 210 N.C. 159
 
 , 161,
 
 185 S.E. 661
 
 , 662 (1936) ;
 
 State v. Corpening,
 

 191 N.C. 751
 
 , 753,
 
 133 S.E. 14
 
 , 15 (1926) ;
 
 State v. Harbert,
 

 185 N.C. 760
 
 , 762,
 
 118 S.E. 6
 
 , 7 (1923). Most recently, our Supreme Court cited
 
 Hill
 
 in
 
 State v. Ellis,
 
 --- N.C. ----, ----,
 
 776 S.E.2d 675
 
 , 678 (2015). The Court did not overrule
 
 Hill
 
 or suggest that its holding is no longer binding
 
 *531
 
 precedent in the fatal variance context, as is the case here.
 

 Id.
 

 at ----,
 
 776 S.E.2d at 678
 
 . In fact, in
 
 Ellis,
 
 our Supreme Court carefully distinguished between
 
 *572
 
 cases raising the issue like the one addressed by
 
 Ellis,
 
 the "facial sufficiency of the underlying criminal pleading" and the issue raised here, whether "a fatal variance exist [s] between the crime charged in the relevant criminal pleading and the evidence offered by the State at trial[.]"
 

 Id.
 

 at ----,
 
 776 S.E.2d at 678
 
 . Our Supreme Court discussed
 
 Hill
 
 as part of its explanation of this distinction:
 

 According to defendant, this Court's decisions establish that, where a criminal pleading purporting to charge the commission of an injury to personal property lists two entities as property owners, both entities must be adequately alleged to be capable of owning property for the pleading to properly charge the commission of the crime. Although defendant cites numerous cases in support of this position, each decision on which he relies involves a claim that a fatal variance existed between the crime charged in the relevant criminal pleading and the evidence offered by the State at trial, rather than a challenge to the facial sufficiency of the underlying criminal pleading. For example, in
 
 State v. Greene,
 

 289 N.C. 578
 
 , 585-86,
 
 223 S.E.2d 365
 
 , 370 (1976), this Court held that there was no fatal variance between the indictment and the evidence in a case in which both men listed as property owners in the indictment were shown to have an ownership interest in the property. Similarly, we concluded in
 
 State v. Hill,
 

 79 N.C. 656
 
 , 658-59 (1878), that a fatal variance did exist in a case in which the indictment alleged that the property was owned by "Lee Samuel and others" while the evidence showed that Lee Samuel was the sole owner of the property in question. Finally, in
 
 State v. Burgess,
 

 74 N.C. 272
 
 , 272-73 (1876), we determined that a fatal variance existed in a case in which the indictment alleged that the property was owned by Joshua Brooks while the evidence tended to show that the property in question was owned by both Mr. Brooks and an individual named Hagler.
 

 Id.
 

 at ----,
 
 776 S.E.2d at 678
 
 . Thus, if the State fails to present evidence of a property interest of some sort in both of the alleged owners, there is a fatal variance between the indictment and the proof.
 
 See
 

 id.
 

 at ----,
 
 776 S.E.2d at 678
 
 .
 

 *573
 
 This Court recently summarized the types of property interest that constitute a "special property interest," which, if proven, are consistent with a larceny indictment's allegation of ownership:
 

 According to well-established North Carolina law, "the indictment in a larceny case must allege a person who has a property interest in the property stolen and that the State must prove that that person has ownership, meaning title to the property or some special property interest."
 
 State v. Greene,
 

 289 N.C. 578
 
 , 584,
 
 223 S.E.2d 365
 
 , 369 (1976). "It is a rule of universal observance in the administration of criminal law that a defendant must be convicted, if convicted at all, of the particular offense charged in the bill of indictment."
 
 State v. Jackson,
 

 218 N.C. 373
 
 , 376,
 
 11 S.E.2d 149
 
 , 151 (1940). In other words, "the allegation and proof must correspond."
 

 Id.
 

 "A variance between the criminal offense charged and the offense established by the evidence is in essence a failure of the State to establish the offense charged." [
 
 State v. Waddell,
 

 279 N.C. 442
 
 , 445,
 
 183 S.E.2d 644
 
 , 646 (1971).] "In indictments for injuries to property it is necessary to lay the property truly, and a variance in that respect is fatal."
 
 State v. Mason,
 

 35 N.C. 341
 
 , 342 (1852).
 

 However, if it can be shown that the person named in the indictment, though not the actual owner of the stolen item, had a "special property interest" in the item, then the defect in the indictment will not be fatal.
 
 State v. Craycraft,
 

 152 N.C.App. 211
 
 , 213,
 
 567 S.E.2d 206
 
 , 208 (2002) ("The State may prove ownership by introducing evidence that the person either possessed title to the property or had a special property interest. If the indictment fails to allege the existence of a person with title or special property interest, then the indictment contains a fatal variance." (citation omitted)).
 

 *532
 
 Our Courts have evaluated circumstances in which a special property interest has been established.
 
 See e.g.
 

 State v. Adams,
 

 331 N.C. 317
 
 , 331,
 
 416 S.E.2d 380
 
 , 388 (1992) (spouses have a special property interest in jointly possessed property, though not jointly owned);
 
 State v. Schultz,
 

 294 N.C. 281
 
 , 285,
 
 240 S.E.2d 451
 
 , 454-55 (1978) (a "bailee or a custodian" has a special property interest in items in his or her possession);
 

 *574
 

 State v. Salters,
 

 137 N.C.App. 553
 
 , 555-56,
 
 528 S.E.2d 386
 
 , 389 (2000) (parents have a special property interest in their children's belongings kept in their residence, but "that special interest does not extend to a caretaker of the property even where the caretaker had actual possession")[,
 
 cert. denied,
 

 352 N.C. 361
 
 ,
 
 544 S.E.2d 556
 
 (2000) ];
 
 State v. Carr,
 

 21 N.C.App. 470
 
 , 471-72,
 
 204 S.E.2d 892
 
 , 893-94 (1974) (where a car was registered to a corporation, the son of the owner of that corporation had a special property interest in the car because he was the sole user of the car and in exclusive possession of it).
 

 Conversely, our Courts have established situations in which a special property interest does not exist.
 
 See e.g.
 

 State v. Eppley,
 

 282 N.C. 249
 
 , 259-60,
 
 192 S.E.2d 441
 
 , 448 (1972) (owner of a residence did not have a special property interest in a gun kept in his linen closet, but owned by his father);
 
 State v. Downing,
 

 313 N.C. 164
 
 , 167-68,
 
 326 S.E.2d 256
 
 , 258-59 (1985) (the owner of a commercial building did not have a special property interest in items stolen from that building as the items were actually owned by the business that rented the building);
 
 Craycraft,
 

 152 N.C.App. at 214
 
 ,
 
 567 S.E.2d at 208-09
 
 (landlord did not have a special property interest in furniture he was maintaining after evicting the tenant-owner).
 

 Gayton-Barbosa,
 

 197 N.C.App. at 135-36
 
 ,
 
 676 S.E.2d at 590-91
 
 (brackets omitted).
 

 Here, the larceny indictment alleges that the stolen property belonged to "Andy Stevens and Manna Baptist Church[.]" But the evidence at trial simply does not demonstrate that Pastor Stevens held title to or had any sort of ownership interest in the stolen property. All of the evidence tends to show that he dealt with the property only in his capacity as an employee of Manna Baptist Church. Pastor Stevens testified that he was employed as the pastor of Manna Baptist Church and lived on the church property, and the entirety of the evidence relevant to his interest in the property, if any, was as follows:
 

 [Prosecutor:] On August 19th of 2012, did you arrive at the church for Sunday services?
 

 [Pastor Stevens:] I did.
 

 *575
 
 [Prosecutor:] And upon entering the church that day, what did you observe?
 

 [Pastor Stevens:] We had normal services in the morning. It wasn't until at the end of the service that we were aware that some of the equipment was missing.
 

 [Prosecutor:] Okay. And how was it that you became aware of that?
 

 [Pastor Stevens:] The sound man was trying to record the message and had to divert back to the pulpit [microphone] because the lapel [microphone] was not picking up and at the close of the service, we found that the receiver was missing.
 

 [Prosecutor:] Okay. Were there any other items besides the receiver that were missing?
 

 [Pastor Stevens:] Yes, sir. There were some microphones and some audio cords.
 

 [Prosecutor:] Where are those generally stored in your church?
 

 [Pastor Stevens:] Usually at the front. The cords are usually at the front or in the baptistery changing area in the back and there are also a couple by the sound system.
 

 [Prosecutor:] And how many microphones and cords were missing?
 

 [Pastor Stevens:] I know that there [were] three-three, maybe four microphones and probably a similar amount of cords.
 

 [Prosecutor:] Do you know what the value or have an estimate as to what the value of those items were?
 

 [Pastor Stevens:] We estimated about five hundred dollars.
 

 ....
 

 *533
 
 [Prosecutor:] Were you able to recover any of the items that were taken?
 

 [Pastor Stevens:] No, sir.
 

 [Prosecutor:] Has the church had to replace those items?
 

 *576
 
 [Pastor Stevens:] We have. We replaced the receiver.
 

 Pastor Stevens testified that "we" had the church service, discovered the missing items, reported this to the police, estimated the value of the items, and replaced the receiver. He does not state who is included in the term "we," although from context he seems to be referring to the entire congregation in regard to having the church service, to himself and the "sound man" in regard to discovering the missing items, and probably to himself and various other persons as to the estimation of value and the replacement of the receiver. In any event, he never identifies any sort of special property interest in the items stolen and he clearly identifies himself as an employee of Manna Baptist Church.
 

 Based upon our Supreme Court's opinion in this case on discretionary review, Manna Baptist Church was an entity capable of owning property.
 
 Campbell,
 
 368 N.C. at ----,
 
 772 S.E.2d at 444
 
 ("[W]e hold that alleging ownership of property in an entity identified as a church or other place of religious worship, like identifying an entity as a "company" or "incorporated," signifies an entity capable of owning property, and the line of cases from the Court of Appeals that has held otherwise is overruled."). The evidence showed that Manna Baptist Church owned the property, but no evidence suggests that Pastor Stevens individually had any sort of ownership interest in the property. Additionally, the fact that Pastor Stevens is an employee of Manna Baptist Church, the true owner of the property, does not cure the fatal variance. In
 
 State v. Greene,
 
 our Supreme Court quoted
 
 State v. Jenkins,
 

 78 N.C. 478
 
 , 479-80 (1878), in support of the rule that an employee in possession of property on behalf of the employer does not have a sufficient ownership interest in the property:
 

 "The property in the goods stolen must be laid to be either in him who has the
 
 general
 
 property or in him who has a
 
 special
 
 property. It must [in] all events be laid to be in some one [sic] who has a
 
 property
 
 of some kind in the article stolen. It is not sufficient to charge it to be the property of one who is a mere servant, although he may have had actual possession at the time of the larceny; because having no
 
 property,
 
 his possession is the possession of his master."
 

 The Court then gave the following example:
 

 "A is the general owner of a horse; B is the special owner, having hired or borrowed it, or taken it to keep for a time; C grooms it and keeps the stable and the key, but
 
 *577
 
 is a mere servant and has no property at all;-if the horse be stolen, the property may be laid to be either in
 
 A or B;
 
 but not in C although he had the actual possession and the key in his pocket." (Emphasis added).
 
 State v. Jenkins,
 
 supra
 

 at 480
 
 .
 
 Accord,
 

 State v. Allen,
 

 103 N.C. 433
 
 , 435,
 
 9 S.E. 626
 
 , 627 (1889).
 

 Greene,
 

 289 N.C. at 584
 
 ,
 
 223 S.E.2d at 369
 
 (brackets omitted). Based upon the example given by our Supreme Court in
 
 Jenkins,
 
 Pastor Stevens was in the position of C, the groom who cared for the horse, while Manna Baptist Church is in the position of A, the owner. Even if Pastor Stevens had actual possession of the property, he had no ownership interest in it.
 
 See
 

 id.,
 

 223 S.E.2d at 369
 
 .
 

 In
 
 Greene,
 
 the indictment alleged that the defendant stole "one Ford Diesel Tractor and one set of Long Brand Boggs of one Newland Welborn and Hershel Greene[.]"
 

 Id.,
 

 223 S.E.2d at 369
 
 (ellipsis omitted). But the evidence showed that "Welborn had legal title to the tractor and that Greene had legal title to the disk boggs and had loaned them to Welborn, who was using them on his tractor for his farming."
 

 Id.,
 

 223 S.E.2d at 369
 
 . The defendant argued that there was a fatal variance because "alleging a property interest in both Greene and Welborn automatically means that the allegation is that they are joint owners."
 
 Id.
 
 at 585,
 
 223 S.E.2d at 370
 
 . Our Supreme Court rejected this argument because the State's evidence showed that both alleged owners had either legal title or a special ownership interest in the property: "Welborn was the bailee or special owner of the disk boggs, and Greene had legal title to
 
 *534
 
 them."
 
 Id.
 
 at 585-86,
 
 223 S.E.2d at 370
 
 . Our Supreme Court also noted that in the indictment, "the order in which the property was listed corresponded to the order that the title holders of the respective pieces of property were listed"; that is, Welborn owned the tractor, and Greene owned the disk boggs.
 
 Id.
 
 at 586,
 
 223 S.E.2d at 370
 
 .
 

 In this case, the State's evidence did not show that Pastor Stevens had any special property interest in the stolen items. As noted above, the evidence showed that they belonged solely to Manna Baptist Church and Pastor Stevens dealt with the property only as an employee of the church. Although both
 
 Jenkins
 
 and
 
 Hill
 
 are very old cases, they have been followed by our courts for many years, and this Court is not at liberty to disregard them. Based upon these binding precedents, the State must demonstrate that both alleged owners have at least some sort of property interest in the stolen items. In addition, possession by an employee or servant of the actual owner is not a type of special property interest which will support this indictment.
 

 *578
 
 Following
 
 Greene
 
 and
 
 Hill,
 
 we hold that a fatal variance exists because the evidence showed that the stolen property belonged to the church only.
 
 See
 

 id.
 
 at 584,
 
 223 S.E.2d at
 
 369 ;
 
 Hill,
 

 79 N.C. at 658-59
 
 .
 

 III. Conclusion
 

 We hold that the trial court committed no error in convicting defendant of breaking or entering a place of religious worship with intent to commit a larceny therein. But we vacate defendant's conviction for larceny after breaking or entering. Because the trial court consolidated these convictions for sentencing, we remand this case to the trial court for resentencing.
 

 NO ERROR IN PART, VACATED IN PART, AND REMANDED.
 

 Judges STEPHENS and McCULLOUGH concur.
 

 [1]
 

 We note that the North Carolina Reports,
 
 362 N.C. 684
 
 ,
 
 670 S.E.2d 568
 
 (2008), incorrectly states that the defendant's petition for discretionary review was allowed, and that the State's motion to dismiss was denied.