IN THE SUPREME COURT OF NORTH CAROLINA

No. 252PA14-3

Filed 6 December 2019

STATE OF NORTH CAROLINA

v.

THOMAS CRAIG CAMPBELL

Appeal pursuant to N.C.G.S. § 7A-30(2) and N.C.G.S. § 7A-31 from the decision of a divided panel of the Court of Appeals, 810 S.E.2d 803 (N.C. Ct. App. 2018), vacating and remanding a judgment entered on 12 June 2013 by Judge Linwood O. Foust in Superior Court, Cleveland County. Heard in the Supreme Court on 2 October 2019 in session in the Forsyth County Hall of Justice in the City of Winston-Salem pursuant to section 18B.8 of Chapter 57 of the 2017 Session Laws of the State of North Carolina.

> *Joshua H. Stein, Attorney General, by Teresa M. Postell, Assistant Attorney General, for the State.*

> *Glenn Gerding, Appellate Defender, by Hannah Hall Love, Assistant Appellate Defender, for defendant-appellee.*

DAVIS, Justice.

In this case, we consider whether the State met its burden of presenting sufficient evidence for the jury to convict defendant of felony larceny. Because we conclude that insufficient evidence existed to support the larceny charge, we modify and affirm the Court of Appeals' decision vacating his conviction.

**Factual and Procedural Background**

This case is before us for the third time. The relevant facts were set out in our first opinion in this case as follows:

On 8 October 2013, the Cleveland County Grand Jury indicted defendant for felony breaking or entering a place of worship and felony larceny after breaking or entering. The larceny indictment specifically alleged that, on 15 August 2012, defendant stole "a music receiver, microphones and sounds system wires, the personal property of Andy Stevens and Manna Baptist Church, ... in violation of N.C.G.S. [§] 14–54.1(a)." Defendant pled not guilty.

At trial, the State's evidence showed that at the conclusion of Sunday services on 19 August 2012, Pastor Andy Stevens of Manna Baptist Church discovered that some audio equipment was missing. Pastor Stevens lives on the Manna Baptist Church property. He testified that the church doors may have been inadvertently left unlocked on 15 August, following Wednesday evening services. When the church secretary arrived the next morning, she locked the doors, and they remained locked until Sunday morning. Although there was no sign of forced entry, Pastor Stevens found defendant's wallet in the baptistry changing area at the back of the church close to where some of the missing equipment previously had been located.

A detective testified that she spoke with defendant at the Cleveland County Detention Center, where he was being held on an unrelated charge. When defendant learned the detective wished to speak with him, he said, "[T]his can't possibly be good. What have I done now that I don't remember?" Defendant then admitted to being at Manna Baptist Church the night the doors were left unlocked. He said he was on "a spiritual journey" and "had done some things," but "did not remember what he had done" in the church.

At the close of the State's evidence, the trial court denied defendant's motion to dismiss the charges based on insufficient evidence. Defendant then testified on his own behalf. He stated that on the night in question, he was asked to leave the house in which he was living, so he packed a duffle bag with his clothes and started walking toward a friend's house. Along the way, he dumped the bag in a ditch because it was too heavy to carry. Defendant arrived at his friend's house around midnight. When his friend's girlfriend asked him to leave, he kept walking until he reached Manna Baptist Church. Defendant noticed that the door to the church was cracked open. He was thirsty

from walking all night, so he entered the church with the intent to find water and sanctuary. Defendant stated that once inside, he prayed, slept, "tried to do a lot of soul searching," and drank a bottle of water, although he admitted he was "not really sure exactly what [he] did the whole time [he] was" in the church. He also testified that he "did not take anything away from the church" when he left at daybreak.

After leaving the church, defendant felt chest pains, so he called 9-1-1. Defendant testified that he was taking a host of medications at the time, including a psychotropic drug, for his heart condition, stress disorder, bipolar condition, and diabetes. An Emergency Medical Technician ("E.M.T.") responded to the call around 6:30 a.m. on Thursday. The E.M.T. testified that defendant said he had been "wandering all night," that defendant looked "disheveled" and "worn out," and that defendant's "shoes were actually worn through the soles." The E.M.T. did not see defendant carrying anything.

At the close of evidence, defendant renewed his motion to dismiss for insufficient evidence, which the trial court again denied. The jury found defendant guilty of felony larceny and felony breaking or entering a place of religious worship, and defendant appealed.

*State v. Campbell*, 368 N.C. 83, 84–85, 772 S.E.2d 440, 442–43 (2015) (*Campbell I*) (alterations in original).

Defendant appealed his convictions to the Court of Appeals, where he raised six issues. The Court of Appeals addressed only two of his arguments, holding that (1) his indictment for larceny was deficient because it failed to allege that Manna Baptist Church was an entity capable of owning property; and (2) the State had failed to present sufficient evidence of an essential element of felony breaking or entering— intent to commit larceny. *State v. Campbell*, 234 N.C. App. 551, 555–61, 759 S.E.2d 380, 383–87 (2014).

We allowed the State's petition for discretionary review and proceeded to reverse the Court of Appeals' decision. First, we held that the larceny indictment was,

in fact, legally adequate. *Campbell I*, 368 N.C. at 86–87, 772 S.E.2d at 443–44. Second, we ruled that sufficient evidence was presented at trial to allow the jury to convict defendant of felony breaking or entering a place of religious worship. *Id*. at 87–88, 772 S.E.2d at 444. Accordingly, we reversed the Court of Appeals' decision and remanded the case to that court for consideration of the remaining issues defendant had raised with regard to his conviction for larceny. *Id*. at 88, 772 S.E.2d at 445.

On remand, the Court of Appeals focused its analysis on defendant's argument that a fatal variance existed between the indictment for larceny and the evidence presented by the State. The Court of Appeals first determined that although defendant had not preserved his fatal variance argument at trial due to his failure to move for the dismissal of the larceny charge on that ground, consideration of defendant's fatal variance argument was nevertheless appropriate based upon the invocation of Rule 2 of the North Carolina Rules of Appellate Procedure.[1] *State v. Campbell*, 243 N.C. App. 563, 571, 777 S.E.2d 525, 530 (2015).

Having decided to invoke Rule 2, the Court of Appeals then addressed the merits of defendant's argument and determined that a fatal variance did exist because although the indictment alleged two owners of the stolen property (Andy Stevens and Manna Baptist Church), the evidence at trial established that only the church was the owner of the missing items. *Id*. at 577–78, 777 S.E.2d at 534. For this

---

[1] Rule 2 provides that "[t]o prevent manifest injustice to a party, or to expedite decision in the public interest, either court of the appellate division may, except as otherwise expressly provided by these rules, suspend or vary the requirements or provisions of any of these rules in a case pending before it upon application of a party or upon its own initiative, and may order proceedings in accordance with its directions." N.C. R. App. P. 2.

reason, the Court of Appeals vacated defendant's larceny conviction. *Id.*

The State once again petitioned this Court for discretionary review, which we allowed. We reversed the Court of Appeals' second decision and remanded the case back to that court in order for it to "independently and expressly determine whether, on the facts and under the circumstances of this specific case, to exercise its discretion to employ Rule 2 of the North Carolina Rules of Appellate Procedure . . . and consider the merits of defendant's fatal variance argument." *State v. Campbell*, 369 N.C. 599, 604, 799 S.E.2d 600, 603 (2017) *(Campbell II)*.

Following our remand, the Court of Appeals issued a third opinion in which it reaffirmed its decision to invoke Rule 2 in order to review the fatal variance claim and concluded once again that a fatal variance existed between the indictment and the evidence at trial. *State v. Campbell*, 810 S.E.2d 803, 818–20 (N.C. App. 2018). After so holding, the Court of Appeals proceeded—based on principles of judicial economy—to also address the additional issues of whether sufficient evidence existed to support defendant's larceny conviction and whether the trial court violated his right to a unanimous verdict in connection with the larceny charge. *Id.* at 820. The Court of Appeals determined that the State's evidence was insufficient to raise a jury question on the larceny charge. *Id.* at 820–23.[2]

Judge Berger dissented from the majority's rulings. In his dissent, he stated

---

[2] The Court of Appeals then provided a brief discussion regarding defendant's "unanimous verdict" argument but ultimately declined to definitively rule upon that issue given its prior determination that the larceny conviction should be vacated on other grounds. *Id.* at 823.

his belief that the majority had erred in invoking Rule 2 under the circumstances of this case. *Id*. at 823–25 (Berger, J., dissenting). He further expressed his belief that substantial evidence existed to support defendant's larceny conviction and that defendant had not been deprived of his right to a unanimous verdict. *Id*. at 826–27 (Berger, J., dissenting).

Based on Judge Berger's dissent, the State appealed as of right to this Court pursuant to N.C.G.S. § 7A-30(2). In addition, we allowed the State's petition for discretionary review as to additional issues pursuant to N.C.G.S. § 7A-31.

## Analysis

The bulk of the parties' arguments in this latest appeal concern the questions of whether the Court of Appeals properly invoked Rule 2 in order to reach the fatal variance issue and, in turn, whether a fatal variance actually existed. We believe, however, that we need not resolve either of those issues based on our determination that the Court of Appeals correctly held the State failed to present sufficient evidence to support the larceny charge.

When reviewing a defendant's motion to dismiss for insufficient evidence, a court must inquire "whether there is substantial evidence of each essential element of the crime and that the defendant is the perpetrator." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998). Substantial evidence exists when "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Barnette*, 304 N.C. 447, 458, 284 S.E.2d 298, 305 (1981). In other words, substantial evidence is "such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984).

However, if the evidence is sufficient "only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion [to dismiss] should be allowed." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). This is true even if "the suspicion so aroused by the evidence is strong." *Id* at 98, 261 S.E.2d at 117. When considering such a motion, a court must view the evidence in the light most favorable to the State and give the State the benefit of all reasonable inferences. *State v. Morgan*, 359 N.C. 131, 161, 604 S.E.2d 886, 904 (2004).

The essential elements of larceny are that the defendant "(1) took the property of another; (2) carried it away; (3) without the owner's consent; and (4) with the intent to deprive the owner of his property permanently." *State v. Reid*, 334 N.C. 551, 558, 434 S.E.2d 193, 198 (1993) (quoting *State v. Perry*, 305 N.C. 225, 233, 287 S.E. 2d 810, 815 (1982)). In order to withstand a defendant's motion to dismiss, the State must present substantial evidence of each of these elements and "that the defendant is the perpetrator" of the larceny. *See Call*, 349 N.C. at 417, 508 S.E.2d at 518.

Based on our thorough review of the record in this case, we agree with the Court of Appeals that the State failed to present sufficient evidence that defendant took and carried away the missing items. *See State v. Campbell*, 810 S.E.2d 803, 820–23 (N.C. Ct. App. 2018). Rather, the evidence simply established that defendant had an *opportunity* to steal the equipment at issue while he was in the church. Under

well-settled caselaw, evidence of a defendant's mere opportunity to commit a crime is not sufficient to send the charge to the jury.

Several of our prior decisions illustrate the principle that a conviction cannot be sustained if "[t]he most the State has shown is that defendant had been in an area where he could have committed the crimes charged." *State v. Minor*, 290 N.C. 68, 75, 224 S.E.2d 180, 185 (1976). In *Minor*, defendant Minor and his co-defendant Ingram were charged with the possession of marijuana for the purpose of distribution after marijuana plants were found growing in Ingram's corn field. *Id.* at 73, 224 S.E.2d at 184. The two had been initially pulled over and arrested while driving near the field, and a search of their vehicle revealed several wilted marijuana leaves and some fertilizer. *Id.* at 72, 224 S.E.2d at 183–84. It was further determined that the defendant had previously used the cornfield to raise garden crops, and a bottle with the name "Minor" on it was found at an old house near the field. *Id.* We summarized the State's evidence as follows:

> About all our evidence shows is (1) that defendant Minor had been a visitor at an abandoned house leased or controlled by co-defendant Ingram; (2) that the marijuana field was 100 feet away from the house but obscured by a wooded area; (3) that the marijuana field was accessible by three different routes; (4) that on the date of Minor's arrest he was on the front seat of a Volkswagen automobile owned and operated by Ingram, where some wilted marijuana leaves were found on the left rear floorboard and one marijuana leaf was found in the trunk.

*Id.* at 74–75, 224 S.E.2d at 185. We concluded that this evidence was insufficient to sustain the defendant's conviction for possession for the purpose of distribution, because—at most—the State had simply shown that the "defendant had been in an

area where he could have committed the crimes charged. Beyond that, we must sail in a sea of conjecture and surmise." *Id.*

We similarly applied this principle in *State v. Murphy*, 225 N.C. 115, 33 S.E.2d 588 (1945). In *Murphy*, the two defendants assaulted a victim and left him unconscious in the street. *Id.* at 117, 33 S.E.2d at 589. Two women picked up the victim and carried him to a nearby porch. *Id.* at 116, 33 S.E.2d at 588. When he regained consciousness, he discovered that his wallet was missing, and the two assailants were subsequently charged with assault and robbery. *Id.*

On appeal, this Court determined that the robbery charge could not be sustained due to insufficient evidence. *Id.* at 116, 33 S.E.2d at 589. Because there were multiple persons present and the victim was unconscious when the money was taken, we reasoned that "[u]nder such circumstances to find that any particular person took the money is to enter the realm of speculation." *Id.* at 117, 33 S.E.2d at 589. We concluded that a charge cannot be sustained "where there is merely a suspicion or conjecture" of the defendant's guilt. *Id.* at 116, 33 S.E.2d at 589.

In *State v. White*, 293 N.C. 91, 235 S.E.2d 55 (1977), the defendant was charged with second-degree murder after a woman was found stabbed to death in her mobile home outside of a motel where the defendant was staying. *Id.* at 96–97, 235 S.E.2d at 58–59. There was testimony that a motel clerk heard a woman scream and then saw a black man run out of the mobile home and head in the direction of defendant's room. *Id.* at 92, 235 S.E.2d at 56. Investigators found some blood specks on the defendant's shoes and shirt but were unable to conclusively match the blood to the victim. *Id.* at

96, 235 S.E.2d at 59. The defendant admitted that he knew the victim but denied entering her mobile home that night. *Id.* at 93, 235 S.E.2d at 57.

We held that although "the evidence raises a strong suspicion as to defendant's guilt" it was "*not* sufficient to remove the case from the realm of surmise and conjecture." *Id.* at 95, 235 S.E.2d at 58. We acknowledged that the State's evidence established that the defendant was in the general vicinity of the victim's residence at the time of the murder, the defendant had given contradictory statements to law enforcement officers, and it could "even reasonably be inferred that the defendant was at the home of the deceased when the deceased came to her death, or shortly thereafter." *Id.* at 97, 235 S.E.2d at 59. Nevertheless, we were troubled by the key facts that the State had *failed* to prove, stating the following:

> (1) [The motel clerk] could not identify the man he saw leaving deceased's mobile home probably because of the distance (200-250 feet) and darkness (1 1/2 hours after sunset); (2) other black men were staying at the motel; (3) no evidence was presented that the defendant owned the murder weapon; (4) no fingerprints were found on the knife; (5) no evidence was introduced of any blood found on the defendant's pants; (6) about fifteen percent of the population has the type of blood found on the left shoe of the defendant; (7) the type of blood on the right shoe is found in thirty percent of the population; (8) the blood specks on the tee shirt, and the blood on the carpet were not identified by type or otherwise; (9) no motive was established for the crime; (10) no flight was attempted by the defendant.

*Id.* at 96–97, 235 S.E.2d at 59 (citation omitted).

Thus, because the State's evidence established no more than the mere opportunity for the defendant to have committed the crime, we vacated the defendant's conviction. *Id; see also State v. Moore*, 312 N.C. 607, 613, 324 S.E.2d 229,

233 (1985) (reversing robbery conviction because the evidence "discloses no more than an opportunity for defendant, as well as others, to have taken the money"); *State v. Cutler*, 271 N.C. 379, 383, 156 S.E.2d 679, 682 (1967) ("It is not enough to defeat the motion for nonsuit that the evidence establishes that the defendant had an opportunity to commit the crime charged.").

\* \* \*

With these principles in mind, we must now apply them to the facts of the present case. Here, the State offered evidence that (1) defendant entered the church without permission on the night of 15 August 2012; (2) he stayed at the church for several hours; (3) he left his wallet at the front of the church near where some of the missing sound equipment was stored; and (4) he could not remember precisely what he had done inside the church that night.

To be sure, this evidence may be fairly characterized as raising a suspicion of defendant's guilt of larceny. It is clear, however, that crucial gaps existed in the State's evidence. The State failed to actually link defendant to the stolen property or to prove that he was in the church at the time when the equipment—which was never recovered—was stolen.

The evidence at trial suggested that the church doors were left unlocked after the Wednesday night service, which ended at approximately 8:00 p.m. on 15 August 2012. Defendant testified that he arrived at the church that night sometime after midnight and left the next morning around "first light." He was found by Emergency Medical Technician Calvin Cobb in a nearby field at approximately 6:30 a.m. on

Thursday morning. It was not until the following Sunday morning that the absence of the equipment was noted. Thus, the State's evidence showed a four-day time span over which the theft could have occurred. It is undisputed that a number of other persons had access to the interior of the church during this four-day period.

Furthermore, the State was unable to show how defendant could have physically been able to carry away the cumbersome equipment at issue, which consisted of an audio receiver, sound system wires, four microphones, and a pair of headphones. While the State attempted to rely upon defendant's testimony that he was carrying a duffle bag earlier in the evening, the duffle bag was not located by officers. Defendant testified that he was holding a black duffle bag filled with clothes when he initially set out towards his friend's house at approximately 10:00 p.m. on Wednesday night and that he discarded the bag shortly after he began walking—realizing it would be too heavy to carry. There was no evidence suggesting that defendant had a bag of any kind with him at the time he entered or exited the church. Moreover, Cobb testified that defendant was empty-handed when Cobb encountered him early the next morning. No evidence was offered that the duffle bag was ever actually used to transport the missing items.

In sum, the State merely proved that defendant was present inside the church for several hours during the four-day period in which the equipment was taken. Under our caselaw, this is simply not enough to sustain a conviction for larceny. We therefore conclude that defendant's larceny conviction must be vacated and that we need not decide the remaining issues raised in this case.

**Conclusion**

For the reasons stated above, we modify and affirm the decision of the Court of Appeals vacating defendant's larceny conviction.

MODIFIED AND AFFIRMED.